UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HAO ZHE WANG pro se
_____

Write the full name of each plaintiff.

-against-

See attached

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

19 CV 9506
(Include case number if one has been assigned)

**AMENDED COMPLAINT**

Do you want a jury trial?
☑ Yes   ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 1/9/17

I. **BASIS FOR JURISDICTION**

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☑ **Federal Question**

☐ **Diversity of Citizenship**

A. **If you checked Federal Question**

Which of your federal constitutional or federal statutory rights have been violated?
15 U.S.C. 1681g(e), 1681n, 1681o, and 1681s-2;

15 U.S.C. 1692d, 1692e, and 1692f; and

Massachusetts General Law Chapter 93, Sections 54A and 68, and Chapter 93A

B. **If you checked Diversity of Citizenship**

1. **Citizenship of the parties**

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
(Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____.

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
(Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____.

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

**Hao Zhe Wang**

First Name            Middle Initial            Last Name

**PO BOX 7075**

Street Address

**New York, NY 10150**

County, City                              State                  Zip Code

**617-320-6448**

Telephone Number                                      Email Address (if available)

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

VERIZON COMMUNICATIONS, INC.
First Name                Last Name

Current Job Title (or other identifying information)
1095 AVENUE OF THE AMERICAS
Current Work Address (or other address where defendant may be served)
NEW YORK, NEW YORK, 10036
County, City              State              Zip Code

Defendant 2:

VERIZON NEW ENGLAND INC.
First Name                Last Name

Current Job Title (or other identifying information)
125 HIGH STREET, OLIVER TOWER 7TH FLOOR
Current Work Address (or other address where defendant may be served)
BOSTON, MASSACHUSETTS, 02110
County, City              State              Zip Code

Defendant 3:

VERIZON NEW YORK INC.
First Name                Last Name

Current Job Title (or other identifying information)
140 WEST STREET  20TH FLOOR
Current Work Address (or other address where defendant may be served)
NEW YORK, NEW YORK, 10007
County, City              State              Zip Code

Defendant 4: **VERIZON CONNECTED SOLUTIONS INC.**
　　　　　　　First Name　　　　　　　　　Last Name

Current Job Title (or other identifying information)
**6820 HOSPITAL DRIVE  3RD FLOOR**
Current Work Address (or other address where defendant may be served)
**ROSEDALE, MARYLAND, 21237**
County, City　　　　　　　　State　　　　　　　Zip Code

### III. STATEMENT OF CLAIM

Place(s) of occurrence: **Massachusetts and New York**

Date(s) of occurrence: **August 2016-present**

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

See attached

_____
_____
_____
_____
_____
_____
_____
_____
_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____
_____
_____
_____

## IV. RELIEF

State briefly what money damages or other relief you want the court to order.

See attached
_____
_____
_____
_____

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

Feb.17, 2020
Dated                              Plaintiff's Signature

Hao Zhe Wang
First Name        Middle Initial        Last Name

PO Box 7075
Street Address

New York, NY 10150
County, City                    State              Zip Code

617-320-6448
Telephone Number                Email Address (if available)

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☐ Yes  ☑ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Page 7

## Attachment to *Complaint*

**Full list of defendants**
VERIZON COMMUNICATIONS, INC.
VERIZON LONG DISTANCE LLC
VERIZON MEDIA LLC
VERIZON SERVICES CORP.
VERIZON WIRELESS (VAW) LLC
VERIZON WIRELESS SERVICES, LLC
VERIZON BUSINESS NETWORK SERVICES INC.
VERIZON CAPITAL CORP.
VERIZON CONNECTED SOLUTIONS INC.
VERIZON CORPORATE RESOURCES GROUP LLC
VERIZON CORPORATE SERVICES GROUP INC.
VERIZON FEDERAL INC.
VERIZON SOURCING LLC
VERIZON SERVICES ORGANIZATION INC.
VERIZON BUSINESS PURCHASING LLC
VERIZON TURNKEY SERVICES LLC
VERIZON SELECT SERVICES INC.
VERIZON ONLINE LLC
VERIZON CONNECT INC.
VERIZON CONNECT NWF INC.
VERIZON CREDIT INC.
VERIZON DIGITAL MEDIA SERVICES INC.
VERIZON INFORMATION TECHNOLOGIES LLC
VERIZON NEW ENGLAND INC.
VERIZON NEW YORK INC.
VERIZON TELEPRODUCTS CORP.

**Continued from Section II. B. The Defendant(s)**

Defendant No.5
VERIZON LONG DISTANCE LLC
ONE VERIZON WAY
BASKING RIDGE NJ    07920

Defendant No.6
VERIZON BUSINESS NETWORK SERVICES INC.
ONE VERIZON WAY
BASKING RIDGE, NEW JERSEY, 07920-1097

Defendant No.7
VERIZON MEDIA LLC
ONE VERIZON WAY
BASKING RIDGE NJ    07920

Defendant No.8
VERIZON WIRELESS (VAW) LLC
ONE VERIZON WAY
BASKING RIDGE NJ    07920

Defendant No.9
VERIZON WIRELESS SERVICES, LLC
ONE VERIZON WAY
BASKING RIDGE NJ    07920

Defendant No.10
VERIZON CAPITAL CORP.
ONE VERIZON WAY
BASKING RIDGE, NEW JERSEY, 07920

Defendant No.11
VERIZON CORPORATE SERVICES GROUP INC.
ONE VERIZON WAY
 BASKING RIDGE, NEW JERSEY, 07920

Defendant No.12
VERIZON CORPORATE RESOURCES GROUP LLC
ONE VERIZON WAY
 BASKING RIDGE, NEW JERSEY, 07920

Defendant No.13
VERIZON SOURCING LLC
ONE VERIZON WAY
BASKING RIDGE, NEW JERSEY, 07920

Defendant No.14
VERIZON BUSINESS PURCHASING LLC
ONE VERIZON WAY
BASKING RIDGE, NEW JERSEY, 07920

Defendant No.15
VERIZON TURNKEY SERVICES LLC
ONE VERIZON WAY
BASKING RIDGE,  NJ  07920  USA

Defendant No.16
VERIZON SERVICES OPERATIONS INC.
ONE VERIZON WAY PO BOX 627
BASKING RIDGE NJ    07920-1097

Defendant No.17
VERIZON TELEPRODUCTS CORP.
ONE VERIZON WAY
BASKING RIDGE, NEW JERSEY, 07920

Defendant No.18
VERIZON SERVICES CORP.
22001 LOUDOUN COUNTY PARKWAY
ASHBURN VA    20147

Defendant No.19
VERIZON FEDERAL INC.
22001 LOUDOUN COUNTY PARKWAY
ASHBURN, VIRGINIA, 20147

Defendant No.20
VERIZON SELECT SERVICES INC.
22001 LOUDOUN COUNTY PARKWAY
ASHBURN, VIRGINIA, 20147

Defendant No.21
VERIZON ONLINE LLC
22001 LOUDOUN COUNTY PARKWAY MAIL CODE C1-3-507
ASHBURN,   VA  20147  USA

Defendant No.22
VERIZON CONNECT INC.
2002 SUMMIT BLVD, STE 1800
ATLANTA, GEORGIA, 30319

Defendant No.23
VERIZON CONNECT NWF INC.
2002 SUMMIT BLVD, STE 1800
ATLANTA, GEORGIA, 30319

Defendant No.24
VERIZON CREDIT INC.
6929 N LAKEWOOD AVENUE
ROOM 5.3-6069
TULSA, OKLAHOMA, 74117

Defendant No.25
VERIZON DIGITAL MEDIA SERVICES INC.
13031 WEST JEFFERSON BLVD.
BUILDING 900
LOS ANGELES, CALIFORNIA, 90094

Defendant No.26
VERIZON INFORMATION TECHNOLOGIES LLC
7701 E. TELECOM PARKWAY MAIL CODE B3E
TEMPLE TERRACE,  FL  33637  USA

**Section III Statement of Claim**

1. I maintained a residence in Springfield, MA since 2014 where I received Verizon services that were paid for in full each month; I met in person a Verizon representative at my residence who took copies of my IDs, including a government-issued ID, in setting up the service. I currently maintain a residence in New York, NY where I receive Verizon services that are paid for in full each month; a Verizon representative likewise met me there to set up the service. In all times since 2014 Verizon has had in its possession my successive addresses and a mobile phone number that has remained unchanged. My family owned - but I have never inhabited - another property in South Hadley, MA, which was rented out in 2015 and 2016.

2. In 2016, I was contacted by a debt recovery firm, McCarthy, Burgess & Wolff, which claimed to be collecting on a debt on a collection account sold to it by Verizon, xxxxxxxxxxxx7092. I did not believe I had any overdue Verizon phone bills and chose to call Verizon. I spoke to Eva at Billing and Sales, Dara at Financial Services, Kesha at Customer Service, Mr. White at Account Verification and some other people at other departments (all the personal names herein are phonetic approximations) and learned that the overdue bills stemmed from a Verizon service set up in 2015 that was associated with the South Hadley address. I explained that I did not recall the Verizon service in question, which never appeared on my monthly Verizon bills, that the address was occupied by tenants and never by me, and that I suspected either identity theft or that Verizon's sales people secretively added unwanted products to my existing Verizon service without consumer consent; I asked for an investigation. Verizon representatives told me that the Verizon service in question would be cut and further that the debt collection effort would cease and the collection/debt account closed. I contacted McCarthy, Burgess & Wolff again and reported my conversations with Verizon; the collection firm, too, agreed to stop further collection attempt.

3. On July 10, 2017, in planning to buy a home and to apply for a mortgage, I requested and received credit reports from three credit bureaus. On those reports there were a few bank accounts, addresses, and an employment record that I did not recognize but also a collection record from "Verizon" that was reported on July 1, 2017. The Verizon entry gave no indication that Verizon had been notified both by me and by McCarthy, Burgess & Wolff that the collection account was disputed and that fraud or identity theft was suspected in the setup of the telecommunication service that gave rise to the collection account. In failing to properly annotate the reported account, Verizon ignored its duties under 15 U.S.C. § 1681s-2(a)(3) of Fair Credit Reporting Act ("FCRA") and Chapter 93 Section 54A of Massachusetts General Law ( "MGL"). Verizon also appeared to have no taken investigation as required by Section 54A, at least none that I was made aware of and asked to partake of. Additionally, Verizon violated the consumer protection statute in Chapter 93A Section 2 of MGL for deceptively misleading me in the 2016 calls about what it was going to do with the telephone service and the collection account. Verizon

violated the same consumer protection statute for its unfair business practice in not properly billing or invoicing me while watching the balance on the telephone service – and presumably Verizon's nominal revenue – accrue.

4. I immediately called Verizon, spoke successively to Amanda at Customer Service, Jordan at Credit Verification and was finally transferred to Ms. Jones at Account Verification Center. All three said there was no case or notes added to my name in 2016, although Ms. Jones promised an investigation and asked for utility bills that could prove my Springfield, MA address in 2015. I pointed out that Verizon was long in possession of my proof of address because I had and continued to have active and continuous Verizon home service there. Ms. Jones thus conceded that Verizon's own billing statements were adequate corroboration of my address. I also contacted McCarthy, Burgess & Wolff again and spoke to a Lalene Barnett who said that the collection agency had stopped any contact with me because the collection account was "recalled" by Verizon in August 2016. I likewise contacted the other furnishers of records that I could not recognize on the credit reports and also wrote to the credit bureaus to dispute these records. It should be noted here that none of these erroneous records, save for the Verizon debt/collection account, was in default or collection or might be considered negative or derogatory.

5. On August 8, I received a letter dated July 25 from Verizon Account Verification, informing me that they were contacted by the credit reporting agencies and telling me to call them by August 1. I called on August 9 and first spoke with a Ms. Charles and then a supervisor named Ms. Detances. The latter stated that a) her department was too big and she did not know Mr. White and the latter left no annotation from my earlier calls; b) there was a notification from another department, Fraud/Credit Reporting, that said the matter was addressed; however, the content of the note or the name of its author was not visible to her because it was not her department; and c) McCarthy, Burgess & Wolff, to which Verizon initially sold the collection account that grew out of the unpaid Verizon phone service, had indeed informed her department in August 2016 that the debt could not be verified, and her department opened an investigation four months later on Nov.29, 2016 – she could not name the steps taken in that investigation or the outcome of it (and these steps certainly did not involve contacting me). Ms. Detances blamed the problem on her department's inability to access records and notes generated by other departments and promised to have higher Verizon authorities who had the power to review records from various departments to better investigate the matter. Rita Johnson at Executive Response and Camille at Triple Escalation Team called me later that month to inform me that she had made annotations on the case accessible to Account Verification Center, which was supposed to be the Verizon organ that dealt with the Credit Reporting Agencies, and persuaded me to cooperate with Account Verification Center.

6. The investigation was then overtaken by a veritable circular firing squad at Account Verification Center: i) a Ms. Thompson instructed me to file a police report and send a copy of my driver's license. I did both and faxed them over; ii) days later, a Ms. Martin informed me that although Verizon received my files, a driver's license with my most current address was needed, as well as my Social Security Card; iii) because I was moving to another state and did not want the application for a new state ID to hold up the

investigation, I spoke with a supervisor at Account Verification Center, Ms. Michely, and asked her to accept a copy of my passport instead – she concluded that neither a brand new driver's license nor social security card was needed in my case (in that I was a current Verizon customer and had residential services with Verizon) and undertook to "heavily" annotate the case so that no future Verizon employee would be confused about the requirement for my identity documentation, and she further promised to have Mr. Barros, purportedly the most senior person at Account Verification, to call me within 24-48 hours to clarify the list of other documents needed; iv) I spoke with Ms. Johnson again, who concurred with the substitution of my passport for driver's license and promised to note so in the account; v) when I got no calls from Mr. Barros, I called back into Account Verification Center and spoke with Ms. Charles again, who denied seeing any notes from Ms. Johnson at Executive Response and Camille at Triple Escalation Team or from Ms. Michely – and who insisted on having my proof of address and social security card before she would let the investigation proceed. After I pointed out the contradiction of her position with those of her supervisors and other Verizon departments, Ms. Charles vowed to again "heavily annotat[e]" the account so that none of her colleagues or supervisors would be deluded into thinking that a shiny new driver's license and my social security card might not be needed.

7. At that point, I concluded that I could no longer expect Verizon to give a coherent answer over the phone, with its Executive Response, Triple Escalation Team, and Account Verification Center (including several tiers and factions within the Account Verification Center) each vehemently repudiating the annotations left by each other and contradicting the instructions given to me by each other. I resorted to writing over the next three months and communicated via emails, post, and fax, requesting that Verizon would likewise respond in writing and give a definitive list of documentation and the kind of cooperation they would need from me. I never again received any response from any Verizon representative in the form of email, post or fax or promised callback. Verizon's disorganization, poor record-keeping, and breakdown in internal communications, prevented Verizon from commencing any meaningful investigation, much less a reasonable one as mandated by 15 U.S.C.1681s-2 and MGL Chapter 93, Section 54A, despite the abundance of recordings of customer calls, memos and annotations made on its internal system, account statements, letters and electric correspondences with customers and its business partners or vendors that Verizon had in its possession. The apparent willfulness and gross negligence with which Verizon acted in ignoring information it received from me and McCarthy, Burgess & Wolff should also incur civil liabilities under 15 U.S.C. § 1681n and § 1681o, MGL Chapter 93, Section 68 and further liabilities under MGL Chapter 93A, Section 2 (a). I eventually ceased my effort to reach out to Verizon when I decided to try a different tack and posted copies of my passport and police report directly to the three credit bureaus, which quickly removed Verizon's collection account from my credit files over late November and early December.

8. I also requested from Ms. Johnson on November 16 and December 7, 2017 "all business records pertaining to the opening of the account in question, including those records - paperwork, emails, letters, audio recordings, etc. - that Verizon has in dealing with its collection agency." Verizon took no actions on these requests, airily ignoring my right as embedded in 15 U.S.C.1681g(e). In fact, I did not – and still have not – receive any statements or bills directly from Verizon regarding the original phone service or the derivative debt/collection account, despite the variety of venues Verizon regularly uses to contact me, especially given the story I was told in 2016 that the account existed for many months and the balance on the account accrued over time. Even discounting the question marks over the setup of the telecommunication service, one must object to Verizon's failure to bill and issue periodic statements over a long period of time to the very person whom Verizon had associated with the account. Verizon's 2015 failure to properly bill me, which would have immediately alerted me to the existence of the suspect phone service and to take actions to terminate the service, may have boosted Verizon's 2015 sales figure, but this billing practice in itself violated the consumer protection afforded by MGL Chapter 93A against unfair commercial practices and must further raise doubts about the legitimacy and legality of the debt that Verizon claimed to have accumulated on the telecommunication service.

9. There were numerous moments in 2016 (when I first disputed the account and alerted Verizon of the possible fraud or when McCarthy, Burgess & Wolff alerted Verizon of the dispute and suspicion of fraud) and in 2017 (when the credit bureaus twice reported my disputes) that a robust investigative mechanism, reasonably designed and reasonably implemented and triggered within a reasonable timeframe, could have easily put a stop to this whole affair. Only reckless and gross negligence and utter callousness towards its customers and victims of a possible identity theft can explain defendants' willful and negligent behavior in 2016 and 2017. I argue that defendants violated 15 U.S.C.1681n, 1681o, and 1681s-2(b) in this gross negligence and gravely hurt my rights as a consumer of credit and victim of identity fraud.

10. It is bitter irony that while the defendants showed scarce concern for victims of identity theft, they jealously guarded their corporate identities over the years. I have heard names of Verizon Communications, Verizon Wireless, Verizon Credit or some variations on these names from McCarthy, Burgess & Wolff or the credit reporting agencies. But the defendants themselves – the various departments and organs, including their legal staff – have continued to conceal or misrepresent the identities of the corporate entities responsible for the initial telecommunication service and for the genesis of the collection account and the subsequent trading of the account, even when pressed for that information during my preparation of this lawsuit. I contend that this concealment and misrepresentation amounts to unfair practices as defined in 15 U.S.C. 1692f.

11. If the defendants took no steps to investigate either the original telecommunication service or the derivative debt/collection account, however, it was not actually sitting idly: Apparently, following a breakdown in communication by the end of 2017, Verizon resold the collection account to yet another debt recovery company and then stealthily bought it back. In response to a demand letter that I issued under Massachusetts General Law Chapter 93A in January 2019, Meryl Friedman, a supervisor on the defendants' legal staff, revealed these transactions and threatened that Verizon would make the account reappear on my credit reports unless I forgo all my claims against Verizon. I refused her offer: I believe it was made in sheer malice and was outright bullying and coercion. Astoundingly, Friedman's letter also suggested that Verizon's investigation learned that I was affiliated with the property address – which is a matter of public record and what I first told Verizon three years earlier. That Verizon's investigation only recently resurfaced and started to parrot *my* original statement to Verizon is a piece of Kafkaesque absurdity and plainly attests to how negligently and how triflingly Verizon conducted its "investigation".

12. This proposal from Verizon also helps to explain an otherwise quizzical remark from Johnson when she tried to cajole me to continue my cooperation with Account Verification Center despite my persistent concern about the latter's many missteps and incompetence: I ought to work with Account Verification Center rather than take the matter directly to the credit bureaus, Johnson said, because Verizon could continue to wreck havoc with my credit by making the collection account reappear on my credit reports even after the credit bureaus delete it. The affected kindness in Johnson's voice notwithstanding, the coercive and retaliatory gesture in Verizon's 2019 settlement proposal and in the newest round of resale and buyback of the collection account that the proposal disclosed makes it unquestionable that Verizon had always intended its actions on its debt sale and buyback to be weaponized and turned into a tool of coercion and blackmail. That Verizon realized back in August 2017 that it could buy back the disputed debt and weaponize it in potential litigations shows also that its failure in the latter half of 2017 to reasonably investigate the circumstances surrounding the setup of the telecommunication service, the subsequent accrual of balance on the service, and its creation, sale and reporting of the derivative collection account was by no means just oversight or negligence. In my conversations with Johnson in 2017, in particular, I pleaded with her to more forcefully intervene in the fouled-up operations of Account Verification Center and rectify the situation, and I repeatedly told her of the financial and emotional toll the mess was creating for my family. But knowledge of the economic plight and personal pain they were causing their victim gave the defendants no pause at all – only added vigor to bully, harass, intimidate him. The defendants' actions thus amount to bad faith and an malicious act with an intent to defame, slander, and to injure,

which is punishable under 15 U.S.C. 1681g(e)(1) , 1681s-2(b), 1681n, and 1681o. Moreover, in purchasing a debt merely to sit on it and use it as a tool to intimidate a customer and to oppress his planned legal actions and to escape legal consequences of Verizon's wrongdoing, Verizon also violated Fair Debt Collection Practices Act 15 U.S.C. 1692e(5), 1692e(8), 1692e(10), 1692f, and 1692d and must be liable for damages as specified in 1692k. And Verizon also violated MGL Chapter 93A Section 2 in its repeated sales and purchases of the collection account for purposes at once alien to debt collection and deceptive, unfair, and illegal.

**Section IV: Relief**

13. I started traveling to New York and spent weekends in August, September, and October 2017 going to open houses for sale in the city, each new weekend with the renewed hope that Verizon would somehow clean up its mess very soon and remove the sole negative/derogatory account on my credit reports so that I would be able to start a loan application and buy one of those houses. All told, I spent three months in this endeavor and visited around one hundred open houses before a painful realization sank in in November that Verizon was never going to act. I then decided instead to take all the documentation directly to the three credit bureaus to ask them to undertake their own investigations. This Equifax, Experian and Trans Union all did over late November and December: the three CRAs removed Verizon's collection account from my credit reports, and I restarted my visits to the open houses in January 2018 and entered an agreement on January 22, applied for and locked the interest rate on a 30-year home mortgage from Wells Fargo on January 26, and completed the purchase in April. For the cost of travel to New York City in August 2017 and for the loss of leisure time as well as time away from work in countless open house visits that were eventually made pointless by Verizon's actions, I sue for $10,000 in damages.

14. At the time of my mortgage application, the rate on 30-year home loan had been quickly rising in late 2017. Mortgage officers at New York-area banks that I visited largely told a similar story: that their rates for the type of mortgage I was looking for had risen 0.25% or 0.375% since autumn 2017. These accounts cohere also with the statistics compiled by Federal Reserve Bank of St. Louis (https://fred.stlouisfed.org/graph/?g=NUh), which shows an average increase of 0.33% among the nation's banks in the 30-year fixed rate mortgage between August 31, 2017, about 30 days after Verizon received inquiries from the credit bureaus for the account, and January 25, 2018, which was about time I locked in my rate. Had Verizon followed a reasonable protocol and completed its investigations as required by federal and state laws, I could have procured a home loan at a rate about 0.33% than what I currently have. A 0.33% differential on a loan of the size I was eventually approved for and obtained means a $55,593.79 difference in total interest payment. For the loss of credit opportunities and the higher rate and interest I am now paying, I sue for $55,593.79 in damages.

15. In August 2017, my family entered a three-month lease, from September to December, for an apartment in New York. We chose short term rental because we had expected to purchase our own apartment soon. However, we had to repeatedly renew the lease - eventually for four additional months at $3,350/month - when it became obvious that we could not even put down an offer for a new home before Verizon – and later the credit bureaus – completed their investigations. For this additional cost due to the loss of credit opportunities, I sue for $13,400 in damages.

16. I further claim emotional anguish associated with the effort to restore my credit and the anxiety of searching for a home in one of the nation's biggest and most expensive real estate markets and the fear of not being able to find an affordable home or an affordable mortgage to support its purchase. The countless futile trips I made in summer and fall 2017 to see new homes coming onto the market brought endless physical aches but overall tended to numb my body, a numbness that was nevertheless from time to time pierced by the horrific apprehension that a bunch of impatient, incompetent, inexperienced entry-level customer service people at Verizon, who constantly self-contradicted, contradicted superiors and were in turn contradicted by superiors, might yet have obtained total and complete control over the financial future of me and my family and could whimsically decide whether I deserve a home to call as my own in the city. Verizon's representatives felt free to query me endlessly about my personal and financial history, only to then quickly discount and trivialize this history in their refusal to carry out a reasonable investigation and an even cursory inspection of their own business records. I felt defamed in the beginning, and then violated, and eventually belittled, trashed, and hopeless for that deeply personal violation. That Verizon also sought to intimidate me and coerce me into giving up my claims in its recent proposal to trade its future ability to damage my credit for my agreement to release Verizon of the legal consequences of its earlier wrongdoings adds insult to injury. I therefore sue for $200,000 for malicious and intentional defamation, invasion of privacy, and for the emotional distress I suffered and for punitive damages.

17. Although the exact timing and sequence of events remain unclear and only vaguely alluded to in the communications and threats by the defendants' legal staff in 2019, in reselling the collection account before another buy-back – likely between early 2018 and early 2019 either to retaliate against me or to look for leverage in preparing for the current lawsuit and certainly in breach of federal and state laws governing debt collection – the defendants caused me further financial harm in lost investment opportunities in 2018-2019. I therefore sue for an additional $61,341 in financial losses.

18. The same coercive tactics Verizon threatened on me this year further entitles me to punitive damages under Massachusetts General Law Chapter 93A. I therefore sue for $280,669.58 in punitive damages on top of $140,334.79 that is the total of the damages I suffered for loss of time and credit opportunities.

19. Lastly, I ask for award of court costs, other potential expenses and costs that may be incurred in my prosecuting this lawsuit, and exemplary and punitive penalties that the Court deems suitable to assess against Verizon.