UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HAO ZHE WANG,

                             *Plaintiff,*

              *-against-*

VERIZON COMMUNICATIONS INC., VERIZON
NEW ENGLAND INC., VERIZON SOURCING LLC;
and  CELLCO PARTNERSHIP,

                         *Defendants.*

---

**Case No. 1:19-CV-09506-JMF**

**Hon. Judge Jesse M. Furman, USDJ**

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT FED. R. CIV. PRO. 12(b)(6) BY DEFENDANTS VERIZON COMMUNICATIONS INC., VERIZON NEW ENGLAND INC., VERIZON SOURCING LLC, AND CELLCO PARTNERSHIP**

**McGIVNEY, KLUGER, CLARK & INTOCCIA, P.C.**

By:  Dean L. Pillarella, Esq. (5707724)
     Howard A. Fried, Esq. (HAF2114)
*Attorneys for Defendants*
**VERIZON COMMUNICATIONS INC., VERIZON NEW ENGLAND, INC., VERIZON SOURCING LLC, and CELLCO PARTNERSHIP**
80 Broad Street, 23rd Floor
New York, NY 10004
*dpillarella@mkcilaw.us.com*
*hfried@mkcilaw.us.com*

Table of Contents

I.   INTRODUCTION                                                            1

II.  PROCEDURAL BACKGROUND                                                   2

III. SUMMARY OF MATERIAL ALLEGATIONS                                         3

IV.  LEGAL STANDARD FOR MOTION TO DISMISS                                    5

V.   LEGAL ARGUMENT                                                          6

     A.   The SAC Fails To Satisfy Rule 8(a)                                 6

     B.   Plaintiff Fails To State A Claim Under FCRA Section 1681g(e)       9

     C.   Plaintiff Fails To State A Claim Under FCRA Section 1681s-2        10

          i.    There Is No Private Right of Action for A Violation of 15
                U.S.C. § 1681s-2(a)                                          10

          ii.   Plaintiff Fails To State a Claim Under 15 U.S.C. § 1681s-2(b)   10

          iii.  Plaintiff Fails to Plead any Damages for Violation of 15
                U.S.C. § 1681s-2(b)                                          12

     D.   Defendants Are Not "Debt Collectors" Regulated by the FDCPA       13

     E.   Plaintiff Fails To Plead A Claim Under 18 U.S.C. §§ 1341 and 1343  14

     F.   Plaintiff Fails to Plead a Civil RICO Claim                        15

          i.    Plaintiff Fails to Plead a Pattern of Racketeering Activity by
                Any Defendant                                               16

          ii.   Plaintiff Fails to Plead the Existence of an Enterprise     17

     G.   Plaintiff Fails To State A Claim Under MGL Ch. 93 and 93A         19

          i.    The Court Lacks Subject Matter Jurisdiction Over Plaintiff's
                MGL Ch. 93 and 93A Claims                                   19

          ii.   The MGL Ch. 93, Section 54A Claim is Preempted by The
                FCRA                                                        20

          iii.  The MGL Ch. 93A, Section 2 Claim is Preempted by The
                FCRA                                                        21

iv.     Plaintiff Fails To State a Claim Under MGL Ch. 93, Section 68     22

H.     Plaintiff Fails to State A Claim Under NY GBL §§ 349 and 601     22

VI.     CONCLUSION     23

## Table of Authorities

### Cases

*Atuahene v. City of Hartford*, 10 Fed.Appx. 33, 34 (2d Cir. 2001) ............................................. 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ................................................................. 8

*Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 322 (E.D.N.Y. 2001) ................................... 17

*Burns v. Bank of America*, 655 F.Supp.2d 240 (S.D.N.Y. 2008) ............................................... 15

*Cadet v. Equifax Credit Servs.*, No. 05-CV-4843SLTLB, 2008 WL 189873, at *7 (E.D.N.Y. 2008) .................................................................................................................................. 15

*Caltablano v. BSB Bank & Trust Co.*, 387 F.Supp.2d 135, 140 (E.D.N.Y. 2005) ..................... 12

*Casella v. Equifax Credit Information Services*, 56 F.3d 469, 475 (2d Cir. 1995) ................... 15

*Comunale v. Home Depot, U.S.A., Inc.*, 328 F.Supp.3d 70, 79 (W.D.N.Y. 2018) ...................... 22

*Cracolici v. Saunders*, No. 18-CV-3807 (CS), 2019 WL 1862470, at *2 (S.D.N.Y. 2019) ....... 17

*Cunha v. LVNV Funding, LLC*, No. 13-11418-MLW, 2015 WL 5737134, at *5 (D. Mass. 2015) .................................................................................................................................. 24

*DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) ............................................................. 17

*Dickman v. Verizon Commc'ns, Inc.*, 876 F. Supp. 2d 166, 174 (E.D.N.Y. 2012) ..................... 24

*First Capital Asset Mont. Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) .......... 19, 20

*Foster v. 2001 Real Estate*, No. 14 CIV. 9434 (RWS), 2015 WL 7587360, at *4 (S.D.N.Y. 2015) .................................................................................................................................. 20

*Frederick v. Capital One Bank (USA), N.A.*, No. 14-CV-5460 (AJN), 2018 WL 1583289, at *6 (S.D.N.Y. 2018) ............................................................................................................. 12, 13

*Gibbs v. SLM Corp.*, 336 F.Sup.2d 1, 3 (D.Mass. 2004) ............................................................ 23

*Gold v. Shapiro, Dicaro & Barak, LLC*, No. 18-CV-6787 (PKC) (SJB), 2019 WL 4752093 at *3 (E.D.N.Y. 2019) .................................................................................................................. 16

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009) ...................... 13, 14

*Houck v. U.S. Bank, N.A. for Citigroup Mortg. Loan Tr. 2007-AR5*, 689 F. App'x 662, 664 (2d Cir. 2017) ........................................................................................................................... 16

*In Re Martino*, 429 B.R. 66, 70 (E.D.N.Y. 2010) ........................................................................ 8

*Islam v. Option One Mortgage Corp.*, 432 F.Supp.2d 181, 187 (D.Mass. 2004) ....................... 23

*Islam v. Option One Mortgage Corp.*, 432 F.Supp.2d 181, 200 (D.Mass. 2006) ....................... 24

*Jacobs v. Carnival Corp.*, No. 06 CIV. 0606 (DAB), 2009 WL 856637 at *4 (S.D.N.Y. 2009) .. 8

*Jenkins v. AmeriCredit Fin. Servs., Inc.*, No. 14CV5687SJFAKT, 2017 WL 1325369, at *6 (E.D.N.Y. 2017) .................................................................................................................. 14

*Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 473 (S.D.N.Y. 2006) 18, 20

*Kuppserstein v. Bank of America, N.A.*, Case No. 14-13766-GAO, 2015 WL 4601704 (D.Mass. 2015) ..................................................................................................................................... 23

*Lance v. PNC Bank, N.A.*, Case No. 15-10250-FDS, 2015 WL 5437090 at *4 (D.Mass. 2015). 23

*Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ....................................... 12

*Lubin v. Dubin*, 13 CV 6619, 2014 WL 794313, at *6 (E.D.N.Y. 2014) ................................... 19

*Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) ........ 18, 19

*Manley v. Doby*, 12 CV 4835, 2012 WL 5866210, at *3 (E.D.N.Y. 2012) ................................ 17

*McCane v. Am.'s Credit Jewelers, Inc.*, No. CIV.A. 05 C 5089, 2005 WL 3299371, at *3 (N.D. Ill. 2005) ............................................................................................................................... 12

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923 (CSH), 1994 WL 88129 (S.D.N.Y. 1994) ............................................................................................................................8
*Milburn v. Blackfrica Promotions, Inc.*, 392 F. Supp. 434, 435 (S.D.N.Y. 1974) .....................17
*Miller v. City of New York*, No. 05 CV 6024(SJ)(RML), 2007 WL 1062505, at *4 (E.D.N.Y. 2007) ...................................................................................................................................19, 20
*Moccio v. Cablevision Sys. Corp.*, 208 F. Supp. 2d 361, 371 (E.D.N.Y.2002) ..........................17
*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)...............................................17, 18
*Ngambo v. Chase*, No. 20-CV-2224 (NSR), 2020 WL 1940553, at *3 (S.D.N.Y. 2020) ......13, 14
*Nguyen v. Ridgewood Sav. Bank*, 66 F.Supp.3d 299, 304 (E.D.N.Y. 2014) ...............................12
*Okocha v. HSBC Bank USA, N.A.*, No. 08 CIV.8650(MHP), 2010 WL 5122614 at * 6 (S.D.N.Y. Dec. 14, 2010) ..........................................................................................................................15
*Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361, 375 (S.D.N.Y. 1997)10
*Peri v. American Exp.*, Case No. 11-Civ-7374 (KBF), 2012 WL 178333 at *4 (S.D.N.Y. 2012)15
*Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996)............17
*Read v. Corning Incorporated*, 371 F. Supp. 3d 87, 91 (W.D.N.Y. 2019)...................................8
*Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)....................................................................20
*Richardson v. Fleet Bank of Massachusetts*, 190 F.Supp.2d 81, 83, 89 (D.Mass. 2001) ...........21
*Ritchie v. N. Leasing Sys., Inc.*, No. 12-CV-4992 (KBF), 2016 WL 1241531, at *16 (S.D.N.Y. 2016) ...................................................................................................................................13, 14
*Ritchie v. Taylor*, 701 F. App'x 45 (2d Cir. 2017) .....................................................................13
*Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) .................18, 19, 21
*Schlessinger v. Valspar Corp.*, 686 F.3d 81, 88 (2d Cir. 2012)..................................................25
*Smartling, Inc. v. Skawa Innovation Ltd.*, 358 F.Supp.3d 124, 151 (D.Mass. 2019) ...........21, 22
*Spiteri v. Russo*, 12 CV 2780, 2013 WL 4806960, at *45 (E.D.N.Y. 2013) ...............................18
*Whiting v. Harley-Davidson Fin. Servs.*, 534 F.Supp.2d 823, 833-34 (N.D.Ill. 2008) ..............15

**Statutes**

15 U.S.C. § 1681 ...........................................................................................................................12
15 U.S.C. § 1681g(e) .........................................................................................................4, 11, 12
15 U.S.C. § 1681g(e)(1)..................................................................................................................11
15 U.S.C. § 1681g(e)(6).............................................................................................................11, 12
15 U.S.C. § 1681n ...........................................................................................................................11
15 U.S.C. § 1681o ...........................................................................................................................11
15 U.S.C. § 1681s ...........................................................................................................................11
15 U.S.C. § 1681s(c)(1)(B)(i) ........................................................................................................11
15 U.S.C. § 1681s-2 ....................................................................................................................4, 23
15 U.S.C. § 1681s-2(a) ..............................................................................................................12, 23
15 U.S.C. § 1681s-2(a)(3)...............................................................................................................12
15 U.S.C. § 1681s-2(b) .............................................................................................12, 13, 14, 15
15 U.S.C. § 1681s-2(b)(1)...............................................................................................................12
15 U.S.C. § 1681s-2(d) ...................................................................................................................12
15 U.S.C. § 1681t(b)(1)(E) .............................................................................................................22
15 U.S.C. § 1681t(b)(1)(F) .............................................................................................................23
15 U.S.C. § 1692, *et seq.*................................................................................................................16
15 U.S.C. § 1692a(6).......................................................................................................................16
15 U.S.C. § 1692a(6)(F) .................................................................................................................16
15 U.S.C. § 1692d.............................................................................................................4, 16, 20

15 U.S.C. § 1692e(10) ..................................................................................4, 16
15 U.S.C. § 1692e(5) ....................................................................................4, 16
15 U.S.C. § 1692e(8) ....................................................................................4, 16
15 U.S.C. § 1692f .........................................................................................4, 16
15 U.S.C. § 1692k; .......................................................................................4, 16
18 U.S.C. § 1961(1)(B) .....................................................................................18
18 U.S.C. § 1961(4) ...........................................................................................19
18 U.S.C. § 1962 .........................................................................................17, 18
18 U.S.C. §§ 1341 and 1343 .......................................................................4, 17
18 U.S.C. §§ 1961, *et seq.* ...............................................................................17
18 U.S.C. §§ 1962(c) and (d) ......................................................4, 10, 19, 20
CH. 93, §§ 54A and 68 ..............................................................................*passim*
NY GBL § 349 ..............................................................................................4, 24
NY GBL § 601 ..............................................................................................4, 25

## Rules

Fed. Rule 8(a) ..............................................................................................*passim*
Fed. Rule 8(a)(2) ..................................................................................................8
Fed. Rule 9(b) ....................................................................................................19
Fed. Rule 12(b)(6) ......................................................................................4, 7, 8

## I.        INTRODUCTION

Undeterred by the admonition that re-naming "any" Verizon entity other than Verizon New England Inc. ("VNE") could expose him to sanctions, Plaintiff Hao Zhe Wang ("Plaintiff") names seven separate "Verizon" entities in his Second Amended Complaint ("SAC"). In fact, Plaintiff even names a new Verizon entity, Cellco Partnership, d/b/a Verizon Wireless ("Cellco"), based on an allegation that once upon a time– in 2005 –Plaintiff had a wireless account with Cellco's predecessor entity.

Not surprisingly, rather than cure the fatal deficiencies of his two prior complaints, the SAC compounds them. First, although 34 pages in length, there is no "short" or "plain" statement to be found as to why Plaintiff is entitled to any relief from any Verizon Defendant.[1] Instead, the SAC is consumed with what the undifferentiated (and sometimes randomly designated) Verizon entities allegedly did to him in the past on accounts not at issue in this action, to other customers who are not parties to this action, and to regulators who have no nexus to this proceeding. In the process, Plaintiff flippantly labels Defendants "fraudsters" and "racketeers" – serious and baseless allegations that should not be further countenanced.

Second, without actually asserting any discernible legal claim, Plaintiff references the following statutory provisions throughout the SAC: (1) the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681g(e); (2) FCRA, 15 U.S.C. § 1681s-2; (3) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692d, 1692e(5), 1692e(8), 1692e(10), 1692f, and 1692k; (4) 18 U.S.C. §§ 1341 and 1343; (5) Racketeering Influenced and Corrupt Organizations

---

[1] This Motion to Dismiss ("Motion") is brought by all Verizon entities named in the SAC: Verizon Communications Inc., Verizon Wireless (VAW) LLC, Verizon Business Network Services Inc., Verizon Corporate Resources Group LLC, Verizon Sourcing LLC, Verizon New England, Inc. and Cellco Partnership d/b/a Verizon Wireless. The moving Defendants are collectively referred to as "Defendants" or "Verizon Defendants." The SAC, however, also references certain Verizon entities not named in this action, conflates several Verizon entities, and uses the term "Verizon" to refer to unidentified entities. Accordingly, the terms "Verizon" or "Verizon entities" are sometimes used in this Motion, as appropriate.

Act ("RICO Act"), 18 U.S.C. §§ 1962(c) and (d); (6) Mass. Gen. Law ("MGL") Ch. 93, §§ 54A and 68; (7) MGL Ch. 93A, Section 2; (8) New York Gen. Bus. Law ("NY GBL") § 349; and (9) NY GBL § 601.  But whether the defect is preemption, lack of a private right of action, or the statute's inapplicability to Defendants, none of these claims can survive.

Plaintiff's *pro per* status should not serve as a license to lodge groundless allegations against Defendants. This action, increasingly untethered to reality with each successive pleading, should be dismissed with prejudice at this juncture.

## II.        PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit on October 15, 2019, naming twenty-six (26) separate "Verizon" entities.  On January 6, 2020, certain of the Verizon entities filed a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss the original Complaint.[2]  ECF #8.  On January 8, 2020, the Court provided Plaintiff with the choice of either opposing the motion or filing an amended complaint curing the defects identified in the motion.  ECF #42.  The Court thereafter ordered that "Plaintiff shall consider whether to drop as Defendants some or all of the non-appearing Verizon entities" from the lawsuit.  ECF #74.  On February 20, 2020, Plaintiff elected to file his First Amended Complaint ("FAC") rather than oppose the motion.  ECF #78. Plaintiff, however, did not dismiss any Verizon entity from his FAC.

On March 9, 2020, the collective Verizon entities filed their motion to dismiss Plaintiff's FAC.  The Verizon entities also submitted a declaration attesting to defendant VNE's sole establishment, ownership, operation, and management of the account at issue in Plaintiff's FAC.

---

[2] The first motion to dismiss was filed by the five Verizon entities acknowledging proper service of the Summons and Complaint at that time: Verizon Communications Inc., Verizon Digital Media Services Inc., Verizon Connected Solutions Inc., Verizon New England Inc., and Verizon New York Inc.  *See* Defendants' Objection to Plaintiff's Affirmation in support of proposed certificates of default (ECF #68), and Court's Order striking proposed certificates of default (ECF 74).

ECF #82.[3]  On October 8, 2020, the Court granted the motion to dismiss the FAC in its entirety, finding that "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct," Plaintiff "failed to satisfy [FRCP] Rule 8's minimum standards."  ECF #131 ("Order") at 4 of 5.  Acknowledging Defendants' declaration as an "admirable effort to obviate the need for th[e] motion," the Court further warned that "re-naming any of the Defendants other than Verizon New England Inc. could expose [Plaintiff] to 'appropriate sanction[s]'" under Rule 11.  ECF #131 at 4 of 5.

On December 21, 2020, despite the Court's admonition, Plaintiff filed his SAC, re-naming six of the Verizon entity defendants included in his FAC, and adding one more, Cellco Partnership d/b/a Verizon Wireless.

## III.      SUMMARY OF MATERIAL ALLEGATIONS

The SAC is exceptionally difficult to decipher.  Stripped of its rhetoric and surmise, the 34-page SAC appears to allege the following against the numerous Verizon entities (still undifferentiated for all relevant purposes).

Plaintiff allegedly received "wireless phone service" from Defendant Verizon Wireless (VAW) LLC ("**VAW**") while he lived in Berkeley, California, in about 2005. VAW "was absorbed into Cellco Partnership ("**Cellco**")."[4]  *See* SAC, ¶ 1.  VAW engaged in collection and credit reporting activities for this wireless account, until Plaintiff paid VAW on the delinquent account in 2009.  *Id*.  This 2005 wireless account, however, notwithstanding Plaintiff's historical references, is not at issue in this action.

---

[3] The declaration was prepared and provided to Plaintiff – at Plaintiff's request – during the course of the parties' meet and confer for the motion to dismiss.

[4] As its name "Cellco Partnership d/b/a Verizon Wireless" makes clear, Cellco is not a proper defendant to this action, which only puts at issue one landline account.  Accordingly, the Court need not refer to the concurrently submitted Declaration of Daniel Reed to dismiss Cellco from this action.  Nevertheless, in a continuing effort to inform Plaintiff of the proper entity to this action, Defendants submit the Reed Declaration establishing that Cellco – a wireless voice and data service provider – did not establish, own, operate or manage the one landline account at issue in this action.

Almost a decade later, Plaintiff allegedly received Verizon landline services at his residence in Springfield, Massachusetts beginning in 2014, and also receives Verizon services at his current residence in New York. *See* SAC, ¶ 2. Notably, these two Verizon landline accounts are also not at issue in this action.

Rather, Plaintiff's family allegedly owns a property in South Hadley, Massachusetts ("South Hadley Property"), which was associated with a Verizon account in Plaintiff's name *See* SAC, ¶ 3. The Verizon account associated with the South Hadley Property, is the only account at issue in this action ("Account"). According to Plaintiff, he learned of the Account in 2016 when he was contacted by a debt collector, McCarthy, Burgess & Wolff ("McCarthy"). *Id*. Curiously, Plaintiff alleges that McCarthy "was contracted by" multiple Verizon entities to collect the Account: **VAW**, Verizon Sourcing LLC ("**VSL**"), Verizon Communications Inc. ("**VCI**"), and Verizon Business Network Services Inc. ("**VBN**"). *Id*. But later, Plaintiff appears to concede that the Account was in fact owned and operated by VNE. SAC, ¶ 6. At some point, Plaintiff allegedly contacted Verizon to explain that while his family did own the South Hadley Property associated with the Account, the property was being rented to tenants at the time the Account was opened. SAC, ¶ 3. As a result, Plaintiff allegedly requested Verizon to investigate the Account. SAC, ¶ 3.

On July 10, 2017, while planning to buy a home in New York and apply for a mortgage, Plaintiff obtained credit reports from three credit reporting agencies ("CRAs"), each of which allegedly reflected the Account in a collection status as of July 1, 2017. *See* SAC, ¶ 5. Plaintiff contends the credit reporting for the Account did not indicate that Plaintiff disputed the Account. *Id*. According to Plaintiff, he subsequently called Verizon to dispute ownership of the Account. *See* SAC, ¶ 8.

Plaintiff alleges he contacted Verizon on August 9, 2017, after receiving a letter dated July 25, 2017, confirming that Verizon had been contacted by the CRAs regarding Plaintiff's

dispute.  *See* SAC, ¶¶ 11 – 12.  By the end of August 2017, Verizon allegedly requested Plaintiff to cooperate with the "Account Verification Center" to further investigate his dispute. *See* SAC, ¶ 14.  Verizon allegedly received and responded to additional CRA disputes in mid-November 2017, verifying the Account as accurate.  *See* SAC, ¶ 18.

Allegedly unable to obtain a satisfactory investigation and resolution with Verizon, Plaintiff then stopped communicating with Verizon and instead submitted his passport and police report around Thanksgiving 2017 to the CRAs, who removed the Account from his credit files between late November and early December 2017.  *See* SAC, ¶¶ 15 – 18, and 20.  Stated differently, Plaintiff concedes that as of December 2017, the Account no longer appeared on his credit report.[5]

## IV.     LEGAL STANDARD FOR MOTION TO DISMISS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must demonstrate that he has met his obligation to provide the grounds for his alleged entitlement to relief, which "requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  "Where causes of action are fatally flawed, dismissal is warranted under Rule 12(b)(6) to spare litigants the burdens of unnecessary pre-trial and trial activity."  *In Re Martino*, 429 B.R. 66, 70 (E.D.N.Y. 2010).  Notwithstanding the liberal standard for allowing amendment, "the court has discretion to deny such a motion when the amendment would be futile."  *Read v. Corning Incorporated*, 371 F. Supp. 3d 87, 91 (W.D.N.Y. 2019).

---

[5] The 34 page SAC also asserts vague and self-contradicting allegations of purported fraudulent activity by the numerous Verizon entities that have no nexus to Plaintiff or the Account.  *See, e.g.,* SAC, ¶¶ 34, 36-40, 42-43, and 46.  Those allegations are not belabored here.

## V.           LEGAL ARGUMENT

### A.      <u>The SAC Fails To Satisfy Rule 8(a)</u>

As a threshold matter, Plaintiff's SAC fails again to satisfy Rule 8(a).  "Federal Rule of Civil Procedure 8(a)(2) provides that civil complaints 'shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief, … in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  *Jacobs v. Carnival Corp.*, No. 06 CIV. 0606 (DAB), 2009 WL 856637, 4 (S.D.N.Y. 2009).  Given Rule 8's mandate for a "'showing,' *rather than a blanket assertion*, of entitlement to relief," Rule 8(a) "requires that at a minimum, 'actions brought against multiple defendants must clearly specify the claims with which each particular defendant is charged.'"  *Twombly*, 550 U.S. at 556 (italics added); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923 (CSH), 1994 WL 88129 (S.D.N.Y. 1994).  Here, in failing to satisfy Rule 8(a), Plaintiff also runs afoul of the Order.

First, the SAC is devoid of any "short and plain statement" of Plaintiff's claims nor his entitlement to relief under such claims.  Rather, Plaintiff's SAC is filled with allegations as to what the undifferentiated Verizon entities did to him in the past on accounts not at issue in this action, to other customers who are not parties to this action, and to regulators who have no nexus to this proceeding.  *See generally* SAC.  The relevance of these allegations remains a mystery.  But what is exceptionally clear is that, after three opportunities, Plaintiff still cannot plead a "short and plain" statement of his claims, nor his entitlement to relief under those claims, to permit any Verizon Defendant to meaningfully respond to–much less defend against– the morass of undifferentiated and conflicting allegations.  This continuing failure, despite three opportunities to cure, is fatal.

Second, simply pairing down the list of defendants from 26 to 7 does nothing to comply with Rule 8(a), nor the Order.  Plaintiff was given a clear admonition:

> The Court notes that the Moving Defendants (in an admirable effort to obviate the need for this motion) identified Verizon New England Inc. as the one and only entity that established, owned or operated, and managed Wang's account.   In light of that information, re-naming any of the Defendants other than Verizon New England Inc. could expose Wang to appropriate Sections.

Order, at p. 4 (internal citations omitted).

Undaunted, Plaintiff again names six Verizon defendants other than VNE.   In fact, Plaintiff even adds a new Verizon Defendant–Cellco Partnership, d/b/a Verizon Wireless.  Simply substituting references to "Verizon" in the FAC with names of random Verizon entities fails to cure the underlying defect.   For example, after alleging that he paid off a wireless cellular account with VAW over a decade ago in 2009, Plaintiff concludes that, seven years later, a third-party collection agency, McCarthy, "was contracted" by not only VAW but three other "Verizon" entities VSL, VCI and VBN for the collection of the landline Account.   *See* SAC, ¶ 3.   Likewise, Plaintiff asserts that VAW, his former *wireless* carrier 16 years ago in Berkeley, California, became the servicer and creditor for his *landline* Account in South Hadley, Massachusetts*, even though Plaintiff later appears to concede generally that VAW is not the proper entity for landlines.   *See* SAC, ¶ 2 ("I received residential services [in Massachusetts] … from … Verizon New England Inc.").   In fact, Plaintiff also appears to concede that VNE "should be the responsible entity."  SAC, ¶ 6.

Likewise, there is no explanation as to how Plaintiff made the leap of holding VNE, VAW, VCI, VSL, and VBN all responsible for violations of collection laws and credit reporting obligations with respect to the single landline Account at issue in this action.   *See* SAC, ¶ 21.  As to Cellco, Plaintiff alleges only that his wireless account back from 2005 (which is not at issue in this proceeding) was "absorbed into" Cellco.   SAC, ¶ 3.   These random and often

conflicting allegations cannot save the SAC.  Defendants already established that VNE was the only entity that established, owned, operated and managed the Account.  ECF #82-2 at ¶ 3. Rumors and speculation cannot change that fact.  *See* SAC, ¶¶ 21, 22 ("I have also heard names of Verizon Communications, Verizon Wireless, Verizon Credit or some variations on these names from the collection agencies or the CRAs").

Finally, based on an example provided in the Order, Plaintiff now attempts to bypass his pleading defects through a "common enterprise theory," adding a new claim under the RICO Act in the process.  Order, p. 3.  But merely labeling the undifferentiated Defendants as "fraudsters" and "racketeers" and declaring that they share common control of office space, the mailroom, collectively manage the credit reporting agencies, and employed a "Russian doll" strategy to cheat their customers and regulators through unspecified schemes does nothing to plead a "common enterprise."  *See* SAC, ¶ 54.  Instead, it only gets Plaintiff closer to sanctions. Order, p. 5.  *See also Atuahene v. City of Hartford*, 10 Fed.Appx. 33, 34 (2d Cir. 2001) (district court dismissal upheld on Rule 8 grounds, where original complaint initially "alleg[ed] a host of constitutional and state common law claims' against "the defendants" without differentiating between them, and later amended pleading "still fail[ed] to identify which defendants were alleged to be responsible for which alleged violations."); *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361, 375 (S.D.N.Y. 1997) (Court applying Rule 8 pleading standard and dismissing claim where plaintiff "merely assert[ed] that an undifferentiated group of 'defendants' conspired to defraud [the plaintiff]").

With each successive complaint, Plaintiff asserts more baseless allegations.  All Verizon Defendants– including VNE –should be dismissed at this juncture, with prejudice.

B.    **Plaintiff Fails To State A Claim Under FCRA Section 1681g(e)**[6]

Although Plaintiff's failure to satisfy Rule 8(a) renders any further analysis of the SAC

academic, each claim Plaintiff attempts to assert suffers its own fatal defects.  First, 15 U.S.C.

Section 1681g(e) of the FCRA addresses the obligations of a furnisher of information to provide

certain disclosures to a verified identity theft victim upon proper written request. SAC, ¶ 31.

Specifically, Section 1681g(e)(1) provides, in pertinent part:

> subject to verification of the identity of the victim and the claim of identity
> theft …, a business entity that has provided … for consideration products,
> goods, or services to, … a person who has allegedly made unauthorized
> use of the means of identification of the victim, shall provide a copy of
> application and business transaction records in the control of the business
> entity…. 15 U.S.C. § 1681g(e)(1).

This claim fails, however, because it is only subject to administrative enforcement.

There is no private right of action for Plaintiff to enforce 15 U.S.C. § 1681g(e).  SAC, ¶ 31.

Specifically, 15 U.S.C. § 1681g(e)(6), entitled "*Limitation on Liability*," unequivocally provides

that neither 15 U.S.C. §§ 1681n nor 1681o, the operative sections creating civil liability for

FCRA violations, apply to any violation of 15 U.S.C. § 1681g, subsection (e), except to the

limited extent allowed by 15 U.S.C. § 1681s.  15 U.S.C. § 1681g(e)(6) ("[e]xcept as provided

in section 1681s of this title, sections 1681n and 1681o of this title do not apply to any violation

of this subsection.").  15 U.S.C. § 1681s, entitled "Administrative Enforcement," expressly

limits the recovery of civil damages under Sections 1681n and 1681o to actions brought by "the

chief law enforcement officer of a State, or an official or agency designated by a State, … on

behalf of the residents of the State." 15 U.S.C. § 1681s(c)(1)(B)(i).  Therefore, consumers like

Plaintiff cannot privately enforce a violation of Section 1681g(e). *McCane v. Am.'s Credit

Jewelers, Inc.*, No. CIV.A. 05 C 5089, 2005 WL 3299371, at 3 (N.D. Ill. 2005) ("§ 1681g(e)(6)

---

[6] The SAC does not delineate the legal claims Plaintiff is attempting to assert.  Accordingly, Defendants
will group the various statutory references listed in the SAC by subject matter, and address them in turn.

bars private lawsuits under 'this subsection.'")

### C.     Plaintiff Fails To State A Claim Under FCRA Section 1681s-2

#### i.     *There Is No Private Right of Action for A Violation of 15 U.S.C. § 1681s-2(a)*

The SAC alleges that "VAW ignored its duties under 15 U.S.C. § 1681s-2(a)(3)" to properly report the Account as disputed. SAC, ¶ 5. There is, however, no private right of action for this claim. The provisions of Section 1681s-2(a) are "enforced exclusively … by the Federal agencies and officials and [certain] State officials." 15 U.S.C. § 1681s-2(d); *Nguyen v. Ridgewood Sav. Bank*, 66 F.Supp.3d 299, 304 (E.D.N.Y. 2014), quoting *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ("There is no private cause of action for violations of Section 1681s-2(a)…. The statute expressly provides that Section 1681s-2(a) shall be enforced exclusively … by the Federal agencies and officials and the State officials identified in section 1681s of this title.") (internal brackets/quotations omitted); *Caltablano v. BSB Bank & Trust Co.*, 387 F.Supp.2d 135, 140 (E.D.N.Y. 2005) (same). Accordingly, Plaintiff's Section 1681s-2(a) claim fails as a matter of law.

#### ii.     *Plaintiff Fails To State a Claim Under 15 U.S.C. § 1681s-2(b)*

Plaintiff's Section 1681s-2(b) claim also fails. *See* SAC, ¶ 19, 21, and 31. For [s]Section 1681s-2(b) … imposes certain procedural obligations on furnishers '[a]fter receiving notice … of a dispute with regard to the completeness or accuracy of any information … [from] a consumer reporting agency." *Frederick v. Capital One Bank (USA), N.A.*, No. 14-CV-5460 (AJN), 2018 WL 1583289, at *6 (S.D.N.Y. 2018) (brackets and internal quotations in original); 15 U.S.C. § 1681s-2(b)(1). The gravamen of these FCRA obligations "simply require[] the furnisher[] of information to investigate and to report information from the investigation [to the CRA]." *Ritchie*, 2016 WL 1241531, at 17. The required investigation must simply be "reasonable," and the "reasonableness of a furnisher's investigation" is "based upon 'what [the

furnisher] was told by the credit bureau.'" *Ngambo v. Chase*, No. 20-CV-2224 (NSR), 2020 WL 1940553, at 3 (S.D.N.Y. 2020); *Frederick*, 2018 WL 1583289, at 7 (reasonableness viewed "in light of what [the furnisher] learned about the nature of the dispute from the description in the CRA's notice of dispute."). Further, "the requirement that furnishers investigate consumer disputes is procedural," and "[a]n investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009). Here, Plaintiff's allegations fail to state a Section 1681s-2(b) claim.

First, although the SAC generally suggests that Plaintiff contacted the CRAs, Plaintiff fails to identify whether (and which) specific Verizon Defendant received a notice of dispute from a CRA concerning the Account. *Ritchie v. N. Leasing Sys., Inc.*, No. 12-CV-4992 (KBF), 2016 WL 1241531, at *16 (S.D.N.Y. 2016), *aff'd sub nom. Ritchie v. Taylor*, 701 F. App'x 45 (2d Cir. 2017) (A furnisher's actual receipt of plaintiff's dispute is "the crucial step that triggers [furnishers'] obligations under 15 U.S.C. § 1681s-2(b)."). Rather, Plaintiff first generally alleges that he received a letter from "Verizon Account Verification Center" on August 8, 2017 stating that "they were contacted by the CRAs," but does not identify which of the seven Verizon Defendants sent that letter. SAC, ¶ 11. Later, although Plaintiff concludes that he "reached out to the CRAs again by mid-November 2017, which sent VAW *more* investigation requests," that allegation conflicts with the allegation that "VNE should be the responsible entity" for the Account, or the many other allegations that all of the Verizon Defendants are collectively liable for violating credit reporting and collection laws. *See generally* SAC and SAC, ¶ 6.

Second, Plaintiff does not specify the dispute or information that was actually transmitted to any Verizon Defendant by a CRA. SAC, ¶ 11 ("I received a letter dated July 25 from [Defendants], informing me that they were contacted by the CRAs…."); ¶ 18 ("I reached

out to the CRAs …, which sent VAW more investigation requests….").  This is fatal. *See*, *e.g.*, *Ngambo*, 2020 WL 1940553, at 3 (scope of requisite investigation is framed by the dispute and information received from CRA – *not* dispute and information received from the consumer directly); *Ritchie*, 2016 WL 1241531, at 16 (Furnisher's relevant scope of investigation is not determined by information provided directly by consumer to furnisher *prior to* notice of dispute received from CRA). While the SAC declares the unreasonableness of the investigation performed by the many undifferentiated or randomly designated Defendants, the SAC never actually describes what information was ever transmitted by any CRA to any of the Defendants. *See* SAC, ¶¶ 12-15, 19.  Likewise, the SAC fails to adequately allege whether and what type of investigation Defendants conducted in response to those disputes.

Accordingly, Plaintiff's allegations amount to nothing more than an improper attempt to reverse engineer liability because Defendants' investigation allegedly yielded a result that was contrary to Plaintiff's wishes.  See, e.g., *Gorman*, 584 F.3d at 1161; *Jenkins v. AmeriCredit Fin. Servs., Inc.*, No. 14CV5687SJFAKT, 2017 WL 1325369, 6 (E.D.N.Y. 2017) ("The FCRA does not require that a furnisher of information delete a consumer's disputed account upon receiving a notice of dispute, but rather, 'simply requires the furnisher of information to investigate and to report information from the investigation.'").

iii.    ***Plaintiff Fails to Plead any Damages for Violation of 15 U.S.C. § 1681s-2(b)***

Plaintiff's claim for violation of 15 U.S.C. § 1681s-2(b) also fails because he has not, and cannot, plead that he suffered any recoverable damages.  *See Burns v. Bank of America*, 655 F.Supp.2d 240 (S.D.N.Y. 2008), quoting *Whiting v. Harley-Davidson Fin. Servs.*, 534 F.Supp.2d 823, 833-34 (N.D.Ill. 2008) ("To obtain an award of actual damages under the FCRA, Plaintiffs must present evidence of a causal relation between the violation of the statute and the loss of credit, or some other harm.") (internal brackets omitted); *Peri v. American Exp.*,

Case No. 11-Civ-7374 (KBF), 2012 WL 178333, 4 (S.D.N.Y. 2012) ("While the factual allegations … state that … [credit] 'pulls' reduced the plaintiff's credit score, they contain no facts suggesting that such reduction proximately caused actual injury to the plaintiff.").

Here, Plaintiff does not allege that he was ever denied a mortgage loan, or any other loan, as a proximate result of Defendants' alleged failure to conduct a reasonable investigation of his credit reporting dispute. Rather, Plaintiff avers that he did not apply for any credit based upon his own speculation that he would not qualify for optimum financing terms. *See, e.g.*, SAC, ¶¶ 5, 60. Indeed, according to Plaintiff, he applied for a mortgage only after the CRAs already deleted the reporting of the Account in December 2017. SAC, ¶ 59. Accordingly, Plaintiff's Section 1681s-2(b) claim cannot survive. *See, e.g., Cadet v. Equifax Credit Servs*., No. 05-CV-4843SLTLB, 2008 WL 189873, 7 (E.D.N.Y. 2008) (Damages for credit denial injuries suffered both before notice to CRA, and after CRA's eventual correction of credit file, were not recoverable).[7]

### D.   Defendants Are Not "Debt Collectors" Regulated by the FDCPA

To plead a violation of any provision of the FDCPA, 15 U.S.C. § 1692 *et seq.*, Plaintiff must allege at least three foundational elements: (1) plaintiff must be a "consumer," (2) defendant must be a "debt collector," and (3) defendant engaged in an act or omission in violation of the FDCPA. *Gold v. Shapiro, Dicaro & Barak, LLC*, No. 18-CV-6787 (PKC)

---

[7] Plaintiff's emotional distress claim, based purely on his own alleged frustration with the investigation process is also without merit. *See Okocha v. HSBC Bank USA, N.A.*, No. 08 CIV.8650(MHP), 2010 WL 5122614 at * 6 (S.D.N.Y. Dec. 14, 2010) ("Although actual damages under the FCRA may encompass pain and suffering, plaintiff has not demonstrated that any emotional distress he experienced is fairly attributable to defendants' unreasonable investigation of his dispute. Firstly, … his own conclusory allegations [of such distress] are insufficient. [cite omitted]. [And] he still has failed to link such distress with the release of inaccurate information to creditors."); *Casella v. Equifax Credit Information Services*, 56 F.3d 469, 475 (2d Cir. 1995) ("[Plaintiff's] argument boils down to the bare contention that he is entitled to damages for pain and suffering simply because he knew of an inaccurate and potentially damaging item in his credit report. We are unaware of any case extending FCRA damages that far…. [W]e do not believe that any creditor or other person ever learned of the derogatory information from a credit reporting agency.")

(SJB), 2019 WL 4752093 at *3 (E.D.N.Y. 2019).  Here, Plaintiff's FDCPA claims fail because Plaintiff has not, and cannot, plead that any of the Defendants is a "debt collector," defined by the FDCPA as follows:

> [A]ny person ... in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts ***owed or due or asserted to be owed or due another*** ... [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts....

15 U.S.C. § 1692a(6) (emphasis added).

"[T]he FDCPA does not apply to 'creditors' who seek in their own name to collect on debts owed to them." *Houck v. U.S. Bank, N.A. for Citigroup Mortg. Loan Tr. 2007-AR5*, 689 F. App'x 662, 664 (2d Cir. 2017).  Indeed, "a plain reading of the statute reveals that, generally, as a matter of law, 'creditors are not subject to the FDCPA." *Doherty*, 375 F.Supp. at 161; 15 U.S.C. § 1692a(6)(F) (excluding from definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … concerns a debt which was originated by such person.").

Here, Plaintiff himself alleges the fundamental distinction between the "Verizon" creditors and their alleged third-party "debt collection agency firms," which Verizon "hired" to collect the debt, including McCarthy, Enhanced Recovery Company, and Collecto Inc.  *See* SAC, ¶¶ 22-23, 25, 33, and 49.  Accordingly, Plaintiff's FDCPA claims under 15 U.S.C. Sections 1692d, 1692e(5), 1692e(8), 1692e(10), 1692f, and 1692k all fail as a matter of law.

### E.     <u>Plaintiff Fails To Plead A Claim Under 18 U.S.C. §§ 1341 and 1343</u>

18 U.S.C. §§ 1341 and 1343 are commonly referred to as the federal "mail and wire fraud statutes."   However,  "no private right of action exists  under  either 18 U.S.C. § 1341 or 18 U.S.C. § 1343." *Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 322 (E.D.N.Y. 2001) (granting private individual's motion to dismiss mail and wire fraud claims); *see also Milburn v.*

*Blackfrica Promotions, Inc.*, 392 F. Supp. 434, 435 (S.D.N.Y. 1974) ("Private litigants cannot sue to redress the offenses defined in … 1341 of Title 18, U.S.C."); *Cracolici v. Saunders*, No. 18-CV-3807 (CS), 2019 WL 1862470, at *2 (S.D.N.Y. 2019) ("18 U.S.C. § 1343 is a criminal statute, and it 'do[es] not create a private right of action.'").    Thus, Plaintiff's claims for violations of 18 U.S.C. §§ 1341 and 1343 must be dismissed as a matter of law.  *See* SAC, ¶¶ 24, 41-42, 52, 55.

## F.    Plaintiff Fails to Plead a Civil RICO Claim

Although each claim referenced in the SAC is defective, none is more patently absurd than the RICO claim. The RICO Act, 18 U.S.C. §§ 1961, *et seq*., was enacted to "prevent organized crime from infiltrating America's legitimate business organizations." *Manley v. Doby*, 12 CV 4835, 2012 WL 5866210, at *3 (E.D.N.Y. 2012) (quoting *Moccio v. Cablevision Sys. Corp.*, 208 F. Supp. 2d 361, 371 (E.D.N.Y.2002)).  To establish a civil RICO claim, "a plaintiff must show: '(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (quoting *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996). Thus, a RICO plaintiff has two separate pleading burdens: First, he "must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962, commonly known as 'criminal RICO.'"  *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir. 1983).  Second, he "must allege that he was 'injured in his business or property by reason of a violation of section 1962."

Here, there is no need to reach the second pleading burden because Plaintiff does not come close to stating any violation of Section 1962 under Rule 8, much less under the heightened pleading standards applicable to RICO claims.  "To successfully plead under the RICO statute, 18 U.S.C. § 1962, a plaintiff must show "'(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5)

directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.'" *Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 473 (S.D.N.Y. 2006), *aff'd sub nom. Jones v. Nat'l Commc'ns & Surveillance Networks*, 266 F. App'x 31 (2d Cir. 2008).   A plaintiff must adequately allege all of these seven elements "before turning to the second burden-*i.e.*, invoking RICO's civil remedies." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). Critically, "[c]ourts look with particular scrutiny at claims for a civil RICO, given the statute's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." *Spiteri v. Russo*, 12 CV 2780, 2013 WL 4806960, at *45 (E.D.N.Y. 2013).

        i.      ***Plaintiff Fails to Plead a Pattern of Racketeering Activity by Any Defendant***

"Racketeering activity" encompasses, among other things, any act indictable for crimes enumerated under 18 U.S.C. § 1961(1)(B), which includes mail and wire fraud.   A RICO "pattern" of racketeering, in turn, "must consist of two or more predicate acts of racketeering." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013); *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (to establish a "pattern" of racketeering activity, a plaintiff must plead "at least two predicate acts, [and] show that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity").   "Predicate acts are 'related' for RICO purposes when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Schlaifer Nance*, 119 F.3d at 97 (*quoting* H.J., 492 U.S. at 240).   When predicated upon mail or wire fraud, these "predicate acts" must be pled with particularity under Rule 9(b), and a plaintiff must allege facts giving rise to a strong inference of fraudulent intent.   *Lundy*, 711 F.3d at 119.   Therefore, allegations failing to specify "the time, place, speaker, and sometimes even the content of the alleged

misrepresentations, lack the 'particulars' required by Rule 9(b)." *Miller v. City of New York*, No. 05 CV 6024(SJ)(RML), 2007 WL 1062505, 4 (E.D.N.Y. 2007) ("Plaintiff does not meet [Rule 9(b)] requirements in his complaint.   Instead, Plaintiff merely accuses handfuls of defendants of engaging in an alleged enterprise without identifying each defendant's role in and relationship to the enterprise.")

Here, other than passing references to mail and wire fraud, the SAC cannot state even one specific instance of mail or wire fraud committed by any specific Defendant, much less allege a "pattern" of such fraud that threatens continued harm.   Generic statements that "VNE, VAW, VCI, VSL, VBN, and VCR's management of one or more critical components of this complex operation … reflects each Verizon defendant's participation in running and managing the entire criminal enterprise and shows each to be in violation of 18 U.S.C. 1962(c) and 1962(d)" do nothing to plead any specific predicate acts, let alone a pattern of racketeering activity.   *See* SAC,   ¶¶ 37, 49, 52, and 54.   *Lundy*, 711 F.3d at 119;   *Wanamaker,* 740 F.Supp. at 140.

### ii. *Plaintiff Fails to Plead the Existence of an Enterprise*

Likewise, Plaintiff does not come close to alleging a RICO enterprise.   18 U.S.C. § 1961(4).   "Defendants alleged to be members of the enterprise unit must 'share a common purpose to engage in a particular fraudulent course of conduct' and work together to achieve their goal." *Lubin v. Dubin*, 13 CV 6619, 2014 WL 794313, 6 (E.D.N.Y. 2014) (quoting *First Capital Asset Mont. Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004)).   Critically, a plaintiff must plead this separate existence of an enterprise, and specifically plead that each defendant participated in the "operation and management" of the enterprise, which requires a showing as to how each defendant had "some part" in "directing the affairs of the enterprise." *First Capital*, 385 F.3d at 175-176; *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

Again, Plaintiff's generalized allegations that Defendants participated in a purported racketeering "enterprise" fail to meet RICO scrutiny. *See Miller,* 2007 WL 1062505 at 4. A complaint must do far more than merely allege a general association among entities: It must plead specific facts regarding the "'hierarchy, organization, and activities' of the association to determine 'whether its members functioned as a unit.'" *Foster v. 2001 Real Estate*, No. 14 CIV. 9434 (RWS), 2015 WL 7587360, 4 (S.D.N.Y. 2015) (cite omitted). While the SAC refers to the existence of a "debt collection enterprise" and its purported activities in general terms, the SAC does not allege even the most basic facts explaining what the roles were of each of the seven Defendants in relation to the enterprise, what each entity did in furtherance of that enterprise, or how they functioned as a singular unit together. *See* SAC, at ¶¶ 35, 42, 55; *Foster*, 2015 WL 7587360, 4 (S.D.N.Y. 2015) (finding that allegations that the "Verizon" entities conspired together to defraud Plaintiff, still "fall short of alleging 'that the conspirators formed and organized a separate entity … on whose behalf they acted; it is not enough if they merely acted together to commit the wrong."); *Foster*, 2015 WL 7587360, 3 (S.D.N.Y. 2015) (RICO claim must allege facts demonstrating actual control or management on the part of each defendant). These fundamental deficiencies are fatal to Plaintiff's RICO claims under either 18 U.S.C. § 1962(c) or (d). *Jones*, 409 F. Supp. 2d at 474 (court dismissing RICO claim based on "wholly conclusory" allegations).[8]

---

[8] Section 1962(d) makes it unlawful for any person to conspire to violate the substantive provisions of RICO. 18 U.S.C. §§ 1962(d) ("It shall be unlawful for any person to conspire to violate any of the provisions of subsection … (c) of this section"). Because Plaintiff's substantive RICO claims fail, Plaintiff's RICO conspiracy claim also fails. *Foster*, 2015 WL 7587360, at *6 (Section 1962(d) RICO conspiracy claims are dependent on the survival of substantive RICO claims under Section 1962(c).).

G.      **Plaintiff Fails To State A Claim Under MGL Ch. 93 and 93A**

i.      ***The Court Lacks Subject Matter Jurisdiction Over Plaintiff's MGL Ch. 93 and 93A Claims***

The Massachusetts Consumer Credit Reporting Act ("MCCRA") is set forth at MGL Ch. 93, Section 50 *et seq*., and the Massachusetts Consumer Protection Act ("MCPA") is set forth at MGL Ch. 93A, Section 1, *et seq*.  *Richardson v. Fleet Bank of Massachusetts*, 190 F.Supp.2d 81, 83, 89 (D.Mass. 2001).  For the Court to have subject matter jurisdiction over these MGL claims, the underlying transactions must have occurred primarily and substantially within the Commonwealth of Massachusetts.[9]  *See Smartling, Inc. v. Skawa Innovation Ltd.*, 358 F.Supp.3d 124, 151 (D.Mass. 2019).  In making this determination, "the court focuses solely on the actionable conduct said to give rise to the violation; other conduct, no matter where it takes place, may not be considered on the question." *Smartling, Inc. v. Skawa Innovation Ltd.*, 358 F.Supp.3d 124, 151 (D.Mass. 2019).  This involves a 3-step inquiry: (1) where the defendant committed the alleged deception, (2) where plaintiff was deceived and acted upon the deception, and (3) where plaintiff incurred his/her losses.  *Id*.  "[I]f the significant contacts of … competing jurisdictions are approximately in the balance, the conduct in question cannot be said to have occurred primarily and substantially in Massachusetts." *Id*.

Here, Plaintiff concedes in the SAC that the transactions supporting his claims under MGL Ch. 93 and 93A principally occurred after Plaintiff became a resident of New York.  *See* SAC, ¶¶ 58-62, 64, 67.  Specifically, Plaintiff was purportedly injured in New York by being forced to accept a higher 30-year mortgage interest rate on his newly purchased New York home due to Defendants' alleged delay in investigating Plaintiff's dispute.  *See* SAC, ¶ 60. Plaintiff also contends that he suffered damage in New York by incurring a short-term, month-to-month lease while waiting for Defendants to correct their reporting of the Account.  *See*

---

[9] Plaintiff's MGL claims include: Ch. 93, Sections 54A and 68 (MCCRA), and Ch. 93A, Section 2 (MCPA).

SAC, ¶ 61. And, while leasing the New York property between August to December 2017, Plaintiff contends that he suffered the loss of leisure time and time away from work in order to attend "countless open houses" in New York.  *See* SAC, ¶ 59.  Plaintiff further alleges injury in the form of "lost investment opportunities," again while residing in New York between March 2018 and January 2019.  *See* SAC, ¶ 62.  Thus, the majority of the alleged conduct occurred while Plaintiff was in New York, and Plaintiff's alleged damages occurred exclusively in New York.   Indeed, "the conduct in question cannot be said to have occurred primarily and substantially in Massachusetts," and the Court should find that it lacks subject matter jurisdiction over Plaintiff's Massachusetts MGL claims.  *Smartling*, 358 F.Supp.3d at 151.

### ii.      *The MGL Ch. 93, Section 54A Claim is Preempted by The FCRA*

Plaintiff's claim for violation of the MCCRA, MGL Ch. 93, Section 54A(a) also fails because it seeks to impose credit reporting obligations that are exclusively regulated by the FCRA.  SAC, ¶ 5.  MGL Ch. 93, Section 54A(a), provides as follows:

> Every person who furnishes information to a consumer reporting agency shall follow reasonable procedures to ensure that the information reported to a consumer reporting agency is accurate and complete.  No person may provide information to a consumer reporting agency if such person knows or has reasonable cause to believe such information is not accurate or complete.

Thus, Section 54A imposes obligations upon a furnisher regarding the reporting of information in an accurate and complete manner.  *Id*.  However, the FCRA includes a broad preemption provision, precluding States from enforcing laws purporting to control "any subject matter regulated under … section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies."   15 U.S.C. § 1681t(b)(1)(E); *Comunale v. Home Depot, U.S.A., Inc.*, 328 F.Supp.3d 70, 79 (W.D.N.Y. 2018) ("[A]llegations that Defendants continued to report [plaintiff's] delinquency to the credit reporting agencies after having been given notice from Plaintiff that such information was purportedly inaccurate

unquestionably falls within the 'subject matter' regulated by § 1681s-2.").  The FCRA does narrowly exempt MGL Ch. 93, Section 54A(a) from its broad preemption scope.  15 U.S.C. § 1681t(b)(1)(F); *Lance v. PNC Bank, N.A.*, Case No. 15-10250-FDS, 2015 WL 5437090 at \*4 (D.Mass. 2015).  However, "[w]hile the FCRA expressly exempts § 54A(a) from its preemptive reach, it includes no such exemption for § 54A(g)—the provision that creates a private cause of action for violations of § 54A(a)." *Id*.  Thus, Section 54A(a) may only be enforced by the appropriate public law enforcement agencies in the Commonwealth of Massachusetts—there is no *private* action to enforce Section 54A.  *Kuppserstein v. Bank of America, N.A.*, Case No. 14-13766-GAO, 2015 WL 4601704 (D.Mass. 2015); *Leet*, supra, 480 F.Supp.2d at 433 fn 7; *Islam v. Option One Mortgage Corp.*, 432 F.Supp.2d 181, 187 (D.Mass. 2004); *Gibbs v. SLM Corp.*, 336 F.Sup.2d 1, 3 (D.Mass. 2004) ("Where … the FCRA does not exempt the state law provision … authorizing a private cause of action, such … action[s] remain preempted.").

### iii. *The MGL Ch. 93A, Section 2 Claim is Preempted by The FCRA*

Plaintiff's claim under the MCPA, MGL Ch. 93A, Section 2 encompasses a violation of Massachusetts' state law unfair business practices statute and is also preempted by the FCRA to the extent it is premised upon violations of state law obligations imposed upon a furnisher's duties otherwise governed by 15 U.S.C. §§ 1681s-2(a) or (b).  *See* SAC, ¶¶ 6-7, 19.  MGL Ch. 93A, Section 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

Here, the gravamen of Plaintiff's claim under MGL Ch. 93A, Section 2, is Defendants' alleged failure to address Plaintiff's dispute regarding the reporting of the Account to the CRAs. *See* SAC, ¶¶ 5-7 and 10-11.  Thus, because these claims are premised upon credit reporting conduct governed exclusively by the FCRA, they are preempted:

> The FCRA provides that "[n]o requirement or prohibition may be imposed under the laws of any State ... with respect to any subject matter regulated under section 1681s-2." 15 U.S.C. § 1681t(b) (1) (F). Chapter 93A is "a

requirement imposed by state law." …. To the extent [plaintiff's] Chapter 93A claim is premised on unfair credit reporting, failure to correct credit information, or failure to investigate a disputed debt, it is pre-empted by the FCRA.

*Cunha v. LVNV Funding, LLC*, No. 13-11418-MLW, 2015 WL 5737134, at *5 (D. Mass. 2015)

(citing *Leet*, supra, 480 F.Supp.2d at 434).

### iv.   *Plaintiff Fails To State a Claim Under MGL Ch. 93, Section 68*

Finally, Plaintiff's attempt to assert a violation of MGL Ch. 93, Section 68, also fails. *See* SAC, ¶ 19.   Section 68 is a catchall provision that states: a "[f]ailure to comply with the provisions of sections fifty through sixty-seven shall constitute an unfair trade practice under the provisions of clause (a) of chapter ninety-three A."  MGL Ch. 93, § 68.   Here, however, the sole provision within those referenced sections alleged to have been violated by Defendants in the SAC is Section 54A, which is preempted by the FCRA.   Therefore, Plaintiff cannot repackage his Section 54A claim as an unfair business practice claim pursuant to Ch. 93A, Section 2.  *See Islam v. Option One Mortgage Corp.*, 432 F.Supp.2d 181, 200 (D.Mass. 2006) (dismissing claim under MGL 93A, which was based upon the same allegations supporting plaintiff's FCRA claim and were therefore preempted by federal law).

### H.   Plaintiff Fails to State A Claim Under NY GBL §§ 349 and 601

Finally, NY GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business."  *Dickman v. Verizon Commc'ns, Inc.*, 876 F. Supp. 2d 166, 174 (E.D.N.Y. 2012).   To the extent discernible, Plaintiff's NY GBL § 349 is also premised upon the "re-reporting [of] a debt" to CRAs in violation of the FCRA, which is preempted by the FCRA.   *Dickman v. Verizon Commc'ns, Inc.*, 876 F. Supp. 2d 166, 174-175 (E.D.N.Y. 2012) (NY GBL § 349 was preempted by FCRA under "total preemption," "statutory preemption," and "temporal preemption" analyses); *see* SAC, ¶ 33.

As for Plaintiff's NY GBL § 601 claim, which enumerates a list of prohibited debt collection activity by a creditor, there is no private right of action under NY GBL § 601. *Schlessinger v. Valspar Corp.*, 686 F.3d 81, 88 (2d Cir. 2012), *certified question accepted*, 19 N.Y.3d 992, 975 N.E.2d 489 (2012), and *certified question answered*, 21 N.Y.3d 166, 991 N.E.2d 190 (2013).

## VI.          CONCLUSION

Despite three opportunities, Plaintiff still cannot allege a "short and plain" statement constituting any claim, or his entitlement to any such claim.  Rather, with each successive pleading, Plaintiff's allegations become increasingly untethered to reality.  The discretion afforded to *pro per* plaintiffs is not without limit.  By lodging baseless allegations of fraud and racketeering against the numerous Defendants, Defendants submit that Plaintiff has now reached that limit.  Accordingly, Defendants respectfully request that the Court grant this Motion, with prejudice.

Dated:          New York, NY
                January 27, 2021

                                        Respectfully submitted,

                                        *Dean L. Pillarella*
                                        Dean L. Pillarella, Esq. (5707724)
                                        Howard A. Fried, Esq. (HAF2114)
                                        **McGIVNEY, KLUGER, CLARK &
                                        INTOCCIA, P.C.**
                                        *Attorneys for Defendants*
                                        **VERIZON COMMUNICATIONS INC.,
                                        VERIZON NEW ENGLAND, INC.,
                                        VERIZON SOURCING LLC, and
                                        CELLCO PARTNERSHIP**
                                        80 Broad Street, 23rd Floor
                                        New York, NY 10004
                                        *dpillarella@mkcilaw.us.com*
                                        *hfried@mkcilaw.us.com*

 Filed and served via. ECF/PACER.