UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK
Civil Action No.:1:19-CV-09506-JMF-RWL

Hao Zhe Wang *pro se*               )
                                    )
                                    )
*vs.*                               )
                                    )
Verizon Communications Inc., et al. )
                                    )
                                    )
                                    )


**<u>Opposition to Motion to Dismiss</u>**

The defendants have filed a Motion to Dismiss (Dkt 143). Plaintiff opposes the motion

and respectfully petitions the Court to deny it.

The current motion to dismiss beats a hasty retreat from several legal positions the

Verizon defendants made in their prior briefs, such as their statute of limitation argument or their

speculation in earlier briefs that that credit denial had somehow become a statutory requirement

to recovery in this Circuit since *Casella v. Equifax Credit Information Services*, 56 F.3d (2d Cir.

1995). These issues are not present in the instant motion, and Plaintiff will not try to beat the

dead horse here.

The motion, in its current incarnation, still consists by and large of tendentious reading of

case law, selective excerpting of the statutes, and frequent mischaracterizations of Plaintiff's

allegations and frequent pretense not to take notice of his allegations and the claims immediately

arising from them. For example, the defendants concede that 15 U.S.C. § 1681s-2(b)(1)(E)

imposes an obligation upon the furnisher of credit information to conduct a reasonable

investigation. The reasonableness of the defendants' investigation – and the extent of willfulness,

gross negligence or even malice behind any failure to conduct a reasonable investigation – is a quintessential jury question that the defendants' motion cannot preempt.

The defendants also concede that a private cause of action is widely recognized to be available under 1681s-2(b), 1681n, and 1681o but choose to ignore the complaint's allegations of malice, willfulness, and gross negligence that is the hallmark of any 1681s-2(b) analysis. Such gross negligence and willfulness – and, eventually, malice – punctuated every turn of the defendants' interactions with the plaintiff and is heavily underlined in the complaint.

The defendants also make a bizarre attempt to redefine FDCPA's meaning of debt collector by arguing that these non-VNE defendants could not have been debt collectors because they "hired" third-party debt collectors. But these defendants' FDCPA liabilities attached as soon as they interjected themselves into the collection of a debt that they did not create. And FDCPA offers no pardon for illegal debt collection conduct just because the defendants subsequently handed over the debt to yet another debt collector.

The motion also stretches and misunderstands the semantics of Supreme Court and Second Circuit's RICO jurisprudence. In truth, the complaint pleads the existence of a Verizon debt collection enterprise and shows the horizontal nexus of each defendant's actions that are interlinked and serve their common goal; the complaint meets the pleading standards for acts of fraud that predicate the RICO claims; the complaint has sufficiently pled the closed-ended and open-ended continuities of each defendant's RICO violations; and the complaint has adequately pled each defendant's control and discretion in conducting individual components and constituent fraudulent acts of the overarching debt collection enterprise.

But before we turn to these arguments, we will address the series of mischaracterizations that the motion made of the complaint. Those mischaracterizations scarcely rise to the level of legal arguments, so we will bat them away first.

i.      *Motion Is Short on Legal Arguments and Long With Factual Mischaracterizations*

Such is the poverty of the defendants' ideas that much of their motion pivots on mischaracterizing the factual allegations in the complaint and misrepresenting Plaintiff's claims.

Although Plaintiff sues for damages he suffered for VAW's fraudulent acts during its attempt to collect a disputed debt stemming from Plaintiff's 2000's wireless account (SAC ¶¶1, 57), the motion bizarrely asserts that "the Verizon account associated with the South Hadley Property, is the only account at issue in this action." More instances of such bizarreness occur throughout the motion.

The motion asserts, for example, that "the SAC cannot state even one specific instance of mail or wire fraud committed by any specific Defendant, much less allege a 'pattern' of such fraud that threatens continued harm", when in fact the complaint is replete with examples of fraudulent emails/letters/fax/calls that individual defendants and their named employees sent to consumers and government regulators, with the dates of those transmissions listed wherever possible and with the deceitful elements highlighted.

The defendants assert also that "Plaintiff fails to identify whether (and which) specific Verizon Defendant received a notice of dispute from a CRA concerning the Account." But the complaint states clearly that "[o]ne of the CRAs has recently identified the Verizon entity [that reported a collection record] as VAW" (SAC ¶5), and it is thus reasonable to infer that the CRAs would have sent the notices of dispute to VAW. The complaint accordingly pins its FCRA

claims on VNE (which the Verizon custodian of records suggested as the party that maintained

the account) and VAW (which was named by the CRA as responsible for the derogatory credit

reporting).

The motion cites the complaint in saying that CRAs "sent VAW more investigation

request" (SAC ¶18) and protests that this statement conflicts with the allegation that "VNE

should be the responsible entity" (SAC ¶6). This merely lifts two quotes out of context from the

complaint and stitches them together: the first quote concerns VAW's FCRA violations and is

based on the third-party documentation that VAW reported the debt to and communicated with

the CRAs, and the second quote concerns VNE and Plaintiff's 2016 interactions ("Since the

defendants have argued that VNE was the entity that created and maintained the disputed

telecommunications account, VNE should be the responsible entity for the violation of the

consumer protection statute in Chapter 93A Section 2 of MGL for deceptively misleading me in

the 2016 calls about what it was going to do with the telephone service and the collection

account."). This sophomoric quote-twisting may score well on a debate team at a third-rate

college but is too shallow for an attorney to try in a court of law.

The motion further contends that "the SAC never actually describes what information

was ever transmitted by any CRA to any of the Defendants" and "the SAC fails to adequately

allege whether and what type of investigation Defendants conducted in response to those

disputes", as if allegations of a defendant's failure of its FCRA duties had to include the

plaintiff's specific knowledge of its internal investigation mechanism and where/how it failed.

This Plaintiff need plead no knowledge of the defendants' inner workings and failures: the

complaint has laid out what the defendants communicated to Plaintiff and concluded that the

absurdity and the self-contradiction of the communications is ample evidence of the unreasonableness of Verizon's investigation.

The Verizon motion further misrepresents that "the gravamen of Plaintiff's claim under MGL Ch. 93A, Section 2, is Defendants' alleged failure to address Plaintiff's dispute regarding the reporting of the Account to the CRAs" and that "Plaintiff concedes in the SAC that the transactions supporting his claims under MGL Ch. 93 and 93A principally occurred after Plaintiff became a resident of New York." Needless to say, Plaintiff concedes no such thing. As a matter of fact, the complaint makes it clear that Plaintiff's MGL Ch.93A claim stems from VNE's (non-existent) billing practice in 2015 and a number of customer service representations in 2016. As such, it is plainly obvious from the complaint that the transactions supporting his claims under MGL Ch. 93 and 93A principally occurred in Massachusetts and that Plaintiff happened to be deceived long enough that he did not discover and suffer damages until after he moved to New York.

In the very same vein the motion distorts Plaintiff's New York state law claims, falsely stating that "Plaintiff's NY GBL § 349 is also premised upon the 're-reporting [of] a debt' to CRAs in violation of the FCRA, which is preempted by the FCRA." In truth, the complaint predicates the New York state law claims upon VAW and VCR's employees' repeatedly *making illegal threats* of re-selling and re-reporting the debt as part of their debt collection effort (SAC ¶ 33). And FCRA certainly is not meant to gut every federal and state statute that outlaws and punishes fraud schemes that happen to have a credit-reporting component.

ii.      *Plaintiff Is Free to Re-Plead All Claims Dismissed Without Prejudice and to Re-Name Defendants or Name New Ones Based on Evidence Now Available*

The Verizon motion angrily accuses Plaintiff of expanding the scope of his claims in the amended complaint and not dropping all the non-VNE defendants as the defendants had hoped.

Plaintiff is naturally entitled to re-pleading all and any claims dismissed without prejudice and to naming new defendants when his investigation turned up enough evidence to support their nomination. In *Aghaeepour v. N. Leasing Sys., Inc.*, 378 F. Supp. 3d 254, 271 (S.D.N.Y. 2019), the plaintiffs discovered new information that "[shed] new light on the magnitude of Defendants' operations…this discovery is sufficient to overcome the doctrine of *res judicata*, and it is similarly sufficient to permit Plaintiffs to re-plead any causes of action dismissed without prejudice." In the instant case, none of Plaintiff's renewed claims was dismissed with prejudice, and this Plaintiff undertook an investigation into the Verizon defendants' debt collection practices and obtained, and in the final months of 2020 he reviewed thousands of pages of public records of government investigations into consumer complaints against Verizon. Those records tell many stories of unknowing victims being mauled with unauthorized wireless and residential accounts and charges, mysterious debts, and ruthless debt collectors. Those records, combined with materials subpoenaed from Verizon's own vendors, further suggest a massive effort by VAW and VNE to deceive and mislead government regulators and investigators about Verizon's debt collection operation, to the immediate detriment of the consumers who sought help. Plaintiff has thus named the Verizon defendants for each entity's particular role in the constituent schemes in the debt collection racket.

The amended complaint contains particularized allegations that VAW, VSL, VCI and VBN were responsible for contracting out the debt collection on Plaintiff and that VAW reported the damaging credit information to the CRAs. Plaintiff submitted to the Court some of the evidence available to him at that time (e.g., Dkt 132-1, 132-5, 132-6) that established VAW and

VCR's complicity in the events described in the original complaint. Since then, Plaintiff only received more evidence from Verizon's vendors implicating VCI, VSL and VBN for their role in contracting the debt collectors to hound Plaintiff. Lastly, Plaintiff has added Cellco because the defendants themselves named Cellco as the successor entity with which VAW merged on or around December 31, 2019 (Dkt 82-2).

As a matter of fact, Plaintiff shared with Verizon counsel his draft subpoenas to Verizon's third-party vendors, and the Verizon counsel asked to excise all references to the non-VNE defendants in the proposed subpoenas to third parties. As a result, the two sides settled on limiting the scope of subpoenas to only the third-party debt collectors' communication with "purported creditor" of accounts in Plaintiff's name (see, for example, the subpoena issued to Collecto, Inc (Dkt 127)). Having already made Plaintiff narrow the scope of the subpoenas issued to their vendors, the Verizon defendants cannot now make those shrill protestations that the amended Complaint includes as defendants those non-VNE entities that are named in third-party documents produced in response to these very subpoenas.

    *iii.*    *Motion Falsely Denies Private Causes of Action and Plaintiff's Standing Under FCRA*

FCRA Section 1681s-2(b) sets forth certain "procedural obligations on furnishers" as soon as they receive notice of disputes from the CRAs, including the obligation to investigate. The court in *Frederick v. Capital One Bank (USA),* N.A., 14-CV-5460 (AJN), 2018 WL 1583289 at *7 (S.D.N.Y. 2018) says the investigation has to be a reasonable one. Insofar as the furnishers fail to have reasonable procedures in place to investigate, a private cause of action then exists and civil liability is imposed.

The complaint is unequivocal that the defendants acted with malice or gross negligence. Private cause of action is thus available against furnishers of information that act with such willfulness and gross negligence. In alleging such willful and gross negligence, a plaintiff "need not show 'malice or evil motive'" but only that the furnishers "knowingly and intentionally committed an act in conscious disregard for the rights of others" (*Dixon-Rollins v. Experian Information Solutions, Inc.; Cushman, 115 F.3d at 226; Philbin, 101 F.3d at 970*). The court in *Abdi v. Verizon,* Civil Action No. 12-7943 (SRC) (D.N.J. Jan. 21, 2014) likewise noted that "the FCRA creates a private right of action for statutory violations...A consumer may sue under 15 U.S.C. § 1681n for willful noncompliance with the FCRA's duties. Civil liability for negligent noncompliance is available under 15 U.S.C. § 1681o." The Fifth Circuit in *Jett v. Am. Home Mortg. Servicing, Inc. 614 Fed. Appx. 711 (5th Cir. 2015)* also argued that FCRA "creates a private cause of action to enforce § 1681s-2(b): 'Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable' for actual damages and attorney's fees. Moreover, '[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer" for actual, statutory, and punitive damages and attorney's fees. § 1681n(a).'"

As stated in the complaint, Plaintiff contacted the CRAs to initiate the dispute process in July 2017, and VAW received notices of dispute from the CRAs later that month. VAW's responses, however, turned increasingly chaotic, self-contradictory, and unlawful. Therefore, the defendants' contention that no private cause of action is available is either a misapprehension of the statute or a deliberate misreading of the complaint designed to make the complaint look like it had somehow omitted allegations of malice or gross negligence. But the complaint is emphatic

that it is alleging gross negligence and even malice and as such avails itself of the right to private action under 1681s-2(b), 1681n and 1681o.

The defendants cite *Ngambo v. Chase*, No. 20-CV-2224 (NSR), 2020 WL 1940553 (S.D.N.Y. 2020) and *Ritchie v. N. Leasing Sys., Inc.*, No. 12-CV-4992 (KBF), 2016 WL 1241531, (S.D.N.Y. 2016) to say that "scope of requisite investigation is framed by the dispute and information received from CRA". But to imply that a plaintiff may not allege unreasonableness of an FCRA investigation unless she has specific knowledge of what the CRAs sent to the furnisher of information is an overreach: in the instant case, the defendants frequently communicated with Plaintiff when the FCRA investigation would have been taking place, and the complaint alleges so much self-contradiction, inconsistency and downright grotesqueness of the defendants' communications that we can reasonably conclude the defendants' investigation in late 2017 was utterly unreasonable, callously careless, and grossly negligent.

When more details of the defendants' investigation surface, we may as well discover further that the defendants' investigation was not only self-contradictory and incoherent but also incommensurate with the information they received from the CRAs at the time, but the self-contradiction and incoherence of the part of the FCRA investigation that Plaintiff caught a glimpse of in 2017 is already overwhelming evidence of an unreasonable investigation. Although "reasonableness" is always held to be a question of material fact, the chaos and self-contradiction in the responses will undercut any potential defense that the defendant's investigation was at all "reasonable". The court in *Schaffhausen v. Bank of America*, N.A. 393 F. Supp. 2d 853 (D. Minn. 2005), for example, notes that "Bank of America's convoluted and inconsistent responses to the CRAs inquiries show that its investigation procedures were unreasonable...The miscommunication and lack of follow through on this issue create at least a jury question as to

the reasonableness of BOA's procedures...The Court finds that this inconsistent response in the face of numerous requests from Schaffhausen and inquiries from the CRAs gives rise to a genuine issue of material fact with regard to BOA's willfulness in failing to comply with the FCRA."

  iv.  *It Is Morally Perverse for Verizon to Argue Allegations of Damage Are Inadequate*

  The complaint alleges damages in terms of Plaintiff's lost time, lost credit opportunities and emotional distress resulting from VAW and VNE's FCRA violations. The case law is well established that allegations of any one of these types of damages satisfy the FCRA's pleading standards.

  In *Alkan v. CitiMortgage*, for example, the court denied the defendant's motion to dismiss on the grounds that the plaintiff failed to adequately plead actual damages where the plaintiff alleged that the defendant had "compromised [plaintiff's] access to credit by providing erroneous information to Experian." 336 F. Supp. 2d 1061, 1063 (N.D. Cal.2004); see also *King v. Bank of Am., N.A.* Case No.: C-12-04168 JCS (N.D. Cal. Oct. 1, 2012).

  Emotional distress caused by willful and malicious violations of FCRA likewise entitles a victim to compensatory damages: "plaintiff may be able to recover compensatory damages for emotional distress under his federal claims (and his testimony alone could support this)…At a minimum, Plaintiff's allegation of pain and suffering satisfies any requirement to plead actual damages." (*Okocha v. HSBC Bank USA, N.A.* 700 F. Supp. 2d 369 (S.D.N.Y. 2010); also, *Drew v.Equifax Info. Servs., LLC,* --- F.3d ----, 2012 WL 3186110, at *6 (9th Cir. Aug. 7, 2012), *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995)).

The Verizon motion argues that Plaintiff lost his standing because the CRAs eventually decided to delete the collection account from his credit report after he appealed anew to the CRAs to take actions. This argument conveniently overlooks Plaintiff's allegation that nearly five months had passed since the CRAs first sent notice to the defendants when the three CRAs decided in November and December 2017 to strike off the debt collection account. The complaint alleges that by the time the CRAs finally made their own findings Plaintiff had already wasted countless hours trying to move the defendants' incoherent, inert, and inept investigation forward; delayed his mortgage application in order to avoid any adverse loan decision that may further dent a credit score already badly damaged by the defendants' reports; lost many opportunities to secure a sales agreement and wasted hundreds of hours visiting open houses; and incurred tens of thousands of dollars in rent for temporary accommodation. The defendants' argument that Plaintiff lost the cause of action because Plaintiff and the third-parties took remedial actions is just another attempt to trivialize the financial harm and emotional anguish the plaintiff suffered in the intervening months. In making this argument, the defendants demonstrate utter callousness and offer a fresh reminder of how irreverently they see and construe their obligations under FCRA. Their belief that no claim can exist because their victim acted to mitigate is frivolous and sickening.

As a matter of fact, in late 2017, Ms. Johnson, the Verizon representative, ridiculed as futile Plaintiff's direct appeal to the CRAs to resolve the reporting dispute and threatened to make the collection account reappear in Plaintiff's credit reports. To carry out this threat, the defendants delegated the collection account to new debt collection firms in the ensuing year in order to make the debt resurface in Plaintiff's credit reports (before buying the debt back again to use the buyback to fend off the impending lawsuit in 2019). Given that the defendants mocked

Plaintiff for taking these mitigation actions in 2017 and viciously punished and retaliated against him for these actions in 2018, their newfound readiness to legally profit from Plaintiff's mitigating actions, the very subject of their cruel mockery and unlawful retaliation, is as much sociopathic sadism as bad lawyering.

   v.     *Plaintiff Is Entitled to Emotional Distress Damages under FCRA – and FDCPA and State Laws*

         The Verizon motion seeks to – furtively and timidly in footnote – discount Plaintiff's emotional distress damages. The footnote references *Okocha* and *Casella*, but the *Okocha* opinion came after a two-day trial and *Casella* after a motion for summary judgment, and neither court considered the sufficiency of the proof of the plaintiff's emotional distress in a motion to dismiss. And whereas the trial court in *Casella* determined that no other person than the plaintiff ever learned of the derogatory information, in this case Plaintiff had to share the information with multiple individuals and non-parties during his fight with Verizon in 2016-2019. And it is also inaccurate to say Plaintiff's emotional distress stemmed solely from "frustration with the investigation process": the complaint alleges that the mental anguish also derived from Plaintiff's stress in his endeavors to secure housing because of his damaged credit. This twofold distortion of the complaint's allegations and the courts' findings in *Okocha* and *Casella* deserves well to be buried in a footnote.

         In fact, when the debt collection resumed and returned in his credit reports in 2018 an 2019, so did his mental distress, loss of sleep, and the associated psychological and physiological manifestations. The quick return of his distress may well be a result of the defendants' repeated and serial manipulation of his credit reports as a weapon of coercion, but it may also be the

function of the trauma that Plaintiff had endured from VAW's merciless and demeaning debt

collection practices a decade earlier.

While his RICO claims may not enable him to recover for the emotional distress he

suffered in 2008-2009 on top of his claims for the financial losses he suffered back then (SAC ¶

57) for VAW's fraudulent and abusive behavior in falsely creating a debt on his wireless account

and collecting on it, VAW (and VBN/VCI/VSL/VCR) cannot escape accountability under

federal and state laws for their role in causing Plaintiff fresh emotional pain in their illegal debt

collection and ancillary credit reporting activities in 2017-2019. Their conduct in repeatedly

packaging and repackaging a debt that their own vendors repeatedly bounced back to them, in

constantly re-reporting that debt to CRAs that had purged it before, and in disregarding the

hurdles of re-reporting a purged account by buying back from one vendor in order to hand it off

to yet another – all when their actions and threats contravened their own policies as well as

established industry practice as reported by FTC and when at least one defendant, VAW, actually

knew its previous debt collection of a fraudulent debt had caused Plaintiff a great deal of pain

and suffering that would have rendered him particularly vulnerable to the defendants' blackmail-

style debt collection and also knew by late 2017 that Plaintiff was having difficulty securing a

loan, housing, and his own financial future because of the defendants' behavior – must be

understood as one of intentional infliction of emotional distress and should incur liability as such.

Since all this conduct arose as part of these five Verizon defendants' debt collection

effort, they must be also responsible under FDCPA and state laws for damages associated with

the emotional distress that Plaintiff suffered since 2017. *Teng v. Metropolitan Retail Recovery*

*Inc.*, 851 F. Supp. 61, 68-69 (E.D.N.Y. 1994), noting that "The few courts that have addressed

the issue of emotional distress as a measure of damages in a FDCPA case, have determined that

such damages are recoverable…we believe that violations of the FDCPA, by their very nature, (e.g., abusive, deceptive or unfair debt collection practices), are those kinds of actions which may be expected to cause emotional distress and, therefore, the availability of damages for such distress is of paramount importance"; see also *Crossley v. Lieberman*, 90 B.R. 682 (E.D.Pa. 1988), aff'd, 868 F.2d 566 (3d Cir. 1989).

> vi.   *Motion Exaggerates FCRA's Preemption of MGL Ch.93 and 93A and GBL 349 Claims*

The complaint enumerates 1) MGL Ch.93 Section 54A claims against VAW and VNE that overlap somewhat with the FCRA claims against these two defendants (SAC ¶¶5, 6, 19, 63); 2) MGL Ch.93A claims against VNE for its fraudulent billing practice in 2015 and fraudulent customer service representations in 2016 (SAC ¶¶6, 7, 33, 64); and 3) GBL 349 claims against VNE, VAW, VCI, VSL, VBN, and VCR for a series of deceptive and coercive debt collection actions that overlap to some degrees with the FDCPA and RICO claims against these defendants (SAC ¶¶33, 64). The Verizon motion wrongly conflates these claims and falsely argues that FCRA preempts these state law claims.

As a preliminary matter, the GBL 349 claims against VNE, VAW, VCI, VSL, VBN, and VCR concern their debt collection conduct that does not fall under FCRA's ambit. The complaint does not even allege that VCI, VSL, VBN, and VCR were furnishing Plaintiff's information to the CRAs, and so these four defendants cannot be shielded by FCRA preemption. *Belfon v. Credit Check Total Consumerinfo.com*, Inc., 2:18-cv-00408 (ADS)(SIL), at *8 (E.D.N.Y. Oct. 1, 2018) ("preemption provisions only apply to those organizations that are subject to the FCRA, as furnishers, CRAs or users. While the Defendant contends that it does not

fit under any FCRA-regulated organization, it cannot look to the FCRA for protection against state law causes of action.")

By the same token, the MGL Ch.93A claims against VNE for its handling of the 2015 phone service account cannot be preempted by FCRA because they arose before VAW reported the account as in default and in collection to the CRAs. The MGL Ch.93A claims against VNE are distinct in time and in subject matter from the FCRA claims against VNE and VAW and cannot be preempted.

The case law is less clear-cut regarding FCRA's preemption of MGL Ch.93 Section 54A claims. § 1681t(b)(1)(F) explicitly states that the preemption "shall not apply...with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws". Still, the defendants argue that the federal legislation does not extend the exception to section 54A(g), which allows a private cause of action by promulgating that "[a] person who furnishes information to a consumer reporting agency shall be liable for failure to comply with the provisions of this section, unless the person so furnishing the information establishes by a preponderance of the evidence that, at the time of the failure to comply with this section, such person maintained reasonable procedures to comply with such provisions". In this the defendants rely on the ruling in *Kuppserstein v. Bank of America, N.A.,* Case No. 14-13766-GAO, 2015 WL 4601704 (D.Mass. 2015).

However, in the absence of a ruling from a higher court, the lower courts have not been consistent in ruling this way and in their legal analyses of this particular issue. Plaintiff does not presume to divine which way this Court may come down on this question of law, but it is intellectually dishonest for the defendants to not reference the opposite conclusion reached in

*Catanzaro v. Experian Information Solutions, Inc.* 671 F. Supp. 2d 256 (D. Mass. 2009), one that

is dutifully acknowledged by the *Kuppserstein* opinion that the defendants happen to lean on.

The *Catanzaro* court aptly summarized the conceptual eccentricity behind a legislative

plan that might allow section 54A(a) to stand but preclude any way to impose liability ("The

logical disparity between the decision of Congress to exempt from preemption the provision of §

54A creating a duty but not the corresponding provision creating liability has puzzled both

judges and commentators") and found a similar sentiment in the opinion of *Islam v. Option One

Mortgage Corp.,* 432 F.Supp.2d 181, 187 (D.Mass. 2004). The *Catanzaro* court thus concluded

that "[a]bsent any indication that the Massachusetts Attorney General or any other state official

possesses the requisite authority to enforce § 54A, the Court declines to foreclose the possibility

of private enforcement of the statute."

In addition, the *Catanzaro* court meticulously tracked the semantic distinctions in the

language of section 54A(g) and of § 1681t(b)(1) before concluding that section 54A(g) is neither

excepted by § 1681t(b)(1)(F) nor – more importantly – preempted by FCRA at all. It observed

that "§ 1681t(b)(1)(F) preempts only those state laws that constitute 'requirements' or

'prohibitions.' Section 54A(g) of the Massachusetts statute is not a 'requirement' or a

'prohibition,' but simply a mechanism allowing private litigants to enforce a state standard for

credit reporting that Congress deliberately chose not to preempt. Moreover, because § 54A(g)

does not directly regulate the conduct of credit reporting agencies and information furnishers, it

does not conflict with the FCRA's goal of creating a uniform national credit reporting standard.

Thus, the Court finds that the plaintiff's claim under § 54A(a) is not preempted by the FCRA."

In short, there is no clear-cut case law that lets FCRA preempt the MGL Ch.93 claim, whereas we have unequivocal statutory language and authorities that FCRA cannot preempt Plaintiff's MGL Ch.93A and GBL 349 claims.

vii.    *Motion Is Duplicitous on Non-VNE Defendants' Debt Collector Status*

The complaint alleges that VAW, VSL, VBN, VCI, and VCR incurred liabilities under FDCPA for their roles in collecting on the account that VNE presumably created in 2015. It alleges that the first four defendants contracted a debt collection agency firm to collect on that account (SAC ¶3) and that the fifth, VCR, jumped into the fray in 2019 to make false and illegal threats in trying to coerce Plaintiff into settling the debt with other defendants (SAC ¶¶28, 30, 41). To the extent that these five defendants did not originate the 2015 account, they are debt collectors by statutory definition.

FDCPA opens with a straightforward definition of debt collectors: "any person ... in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts *owed or due or asserted to be owed or due another*..." 15 U.S.C. § 1692a(6); italics added. Insomuch as VCI/VSL/VAW/VBN/VCR are not alleged to be not responsible for the creation of the 2015 phone service account (which the defendants presently blame solely on VNE) and yet alleged to have sold, bought and collected the debt stemming from the 2015 account, they must be considered debt collectors in the plain meaning of § 1692a(6).

The Verizon motion nonetheless makes a bizarre attempt to redefine FDCPA's meaning of debt collector by arguing that these non-VNE defendants could not have been debt collectors because they "hired" third-party debt collectors (i.e. McCarthy, Enhanced Recovery Company,

and Collecto Inc.) But these five defendants' FDCPA liabilities attached as soon as they interjected themselves into the collection of a debt that they did not create. FDCPA offers no pardon for illegal debt collection conduct just because the defendants subsequently handed over the debt to yet another debt collector.

Notably, federal courts and agencies recognize that reporting a debt is debt collecting activity, too. The court in *Brooks v. Midland Credit Mgmt., Inc.* (D. Md. Mar. 13, 2013) chose to rely "on a December 23, 1997, letter from Federal Trade Commission Attorney John F. LeFevre to Robert G. Cass stating that reporting a debt to a CRA constitutes a collection activity under § 1692g(b)." Since VAW has now been identified as the party reporting the disputed debt resulting from the 2015 account, VAW's fraudulent and malicious credit reporting, a crucial component in the overarching debt collection enterprise, must be punished under FCRA as well as FDCPA and RICO statutes.

### viii.    Motion Poorly Understood Civil RICO's Pleading Standards

The motion to dismiss treats the legal questions surrounding the RICO elements with surprising resignedness. The motion lists seven elements in the pleading standard for a RICO scheme but contests only perfunctorily and indifferently that the complaint does not allege the enterprise and pattern elements of a RICO claim.

The defendants rely heavily on *Foster v. 2001 Real Estate*, No. 14 CIV. 9434 (RWS), 2015 WL 7587360 (S.D.N.Y. 2015) to argue that the complaint does not say enough about the "hierarchy, organization, and activities" of the Verizon debt collection enterprise. The motion's

reliance on *Foster*, with readily distinguishable facts, is woefully misguided.[1] *Boyle v. United States* 556 U.S. 938, 946 (2009) held that RICO enterprise "need not have a hierarchical structure or a chain of command" and "the term 'structure' simply means the way in which parts are arranged or put together to form a whole and the interrelation or arrangement of parts in a complex entity."

Courts in this circuit have been consistently deferential to *Boyle* and earlier Supreme Court rulings in RICO cases. The court in *Bd. of Managers of Trump Tower at City Ctr. Condo. v. Palazzolo*, 346 F. Supp. 3d 432, 453 (S.D.N.Y. 2018) held, for example, that the structural features of a RICO enterprise are "[1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." And in *Duval v. Albano*, 16 Civ. 7810 (KPF), at *24-25 (S.D.N.Y. July 18, 2017) the court ruled that the plaintiff sufficiently alleged a RICO enterprise by describing one defendant as "the face of all negotiations and day-to-day operations in connection with the MCC Transaction" and a second defendant "as the original agent for service of process" and owner of "the property listed as the address for service of process on WSOG" and concluded that "these allegations suffice to plead one, if not several, RICO enterprises."

In the instant case, the complaint has detailed specific and differentiated roles each defendant played in the debt collection racket: 1) VNE and VAW generated residential and wireless accounts, respectively (SAC ¶¶ 1, 2, 39, 40, 41); 2) VAW/VSL/VCI/VBN handled debt collection and recruited and delegated debt-collection vendors (SAC ¶¶ 3, 22, 23, 46, 47; 3)

---

[1] The Verizon motion is so reliant on *Foster* as to say that *Foster* was a "finding that allegations that the 'Verizon' entities conspired together to defraud Plaintiff, still 'fall short of alleging' that the conspirators formed and organized a separate entity." But *Foster* most certainly did not find the allegations against Verizon fall short. In fact, *Foster* did not make any findings one way or another about either Verizon or this Plaintiff. It appears the defendants' self-serving embrace of *Foster* finally got us a wild and licentious citation.

VAW reported the collection accounts to gain crucial leverage over the debtors (SAC ¶¶ 5, 30,

39); 4) VNE, VCI, and VAW continuously tried to foil investigations by state governments and

public regulators into their debt collection practices (SAC ¶¶ 36, 44, 45, 46, 47, 50); and 5) VCR

tried to illegally pressuring Plaintiff to settle the debt (SAC ¶¶ 28, 30, 33). An outsider's

knowledge of the corporate structure and ties of the Verizon defendants would not go much

further than publicly available information about their shared directorship and locations, but the

complaint points to the defendants' common purpose of illegal debt collection and alleges

enough relationships among these defendants and enough connections and complementarities in

their actions to suffice the allegation of enterprise.

At the end of the "enterprise" section of the motion, the defendants also parenthetically

cite *Foster* to say "RICO claim must allege facts demonstrating actual control or management on

the part of each defendant". But it is again a misreading of case law and statutory language to say

that the complaint ought to somehow allege that each defendant exercised control or

management of the entire enterprise. In *Reves v. Ernst Young*, 507 U.S. 170, 185, 113 S.Ct. 1163,

122 L.Ed.2d 525 (1993), the Supreme Court took a close look at the verbiage and concluded that

"the word `participate' makes clear that RICO liability is not limited to those with primary

responsibility". See also *De Falco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001). Thus, each

defendant need only "have some part in directing the affairs of the alleged unit". *Aerowest*

*GMBH v. Freitag*, CV 15-2894, at *6 (E.D.N.Y. June 28, 2016).

The complaint alleges that VNE was responsible for creating unauthorized landline

accounts or charges and VAW for unauthorized wireless accounts or charges. It is reasonable to

infer that they exercised some control over either landline or wireless services. The complaint

alleges that VAW/VSL/VCI/VBN contracted out the debt collection to vendors, and this

contracting, too, should indicate these defendants' control of this particular scheme or unit of the RICO enterprise. The complaint then alleges that VAW was in charge of reporting the debt to the CRAs. It then alleges VNE and VAW were running a regulator-relations unit to thwart governmental regulation and investigation of the RICO enterprise. The complaint need not allege that any one defendant had some commercial or operational primacy over the other defendants or that any one defendant was responsible for the inception of the enterprise and was the chief financial beneficiary of its racketeering activities, for that is not what is required of an allegation of RICO participation under *Reves*.

The other pillar of the defendants' attack on the complaint's RICO claims is their assertion that the complaint does not allege a RICO pattern, although that section easily betrays the defendants' confusion about the semantics of RICO case law because the section deals not with the question of pattern but with the allegations of RICO predicate acts. But we will happily address both the predicate act element and the pattern element here.

To begin with, the amended complaint paints a very detailed picture of the commission of each fraud, each defendant's role in each fraudulent scheme, and how the many schemes came together to serve a common goal. The complaint lists the names of defendant agents or employees involved in each fraudulent act (SAC ¶¶ 3, 14, 17, 28, 45, 46, 47, 50) gives the time of each act (SAC ¶¶ 3, 17, 22, 28, 39, 40, 44, 45, 46, 47, 49, 50) highlights the deceitful elements in question in each email/fax/letter (SAC ¶¶ 22, 28, 29, 44, 45, 46, 47, 49, 50) and explains the fraud behind each deceit (SAC ¶¶ 23, 24, 25, 30, 31, 39, 40, 44, 45, 46, 47, 49, 50, 51). By all means the complaint meets the heightened pleading standard for the fraudulent acts on which the RICO claims are predicated.

In addition to sufficient pleadings of the mail and wire fraud that predicate the RICO claims, allegations of a RICO pattern require the showing of relatedness and continuity as established in *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989), which held that the predicate acts must be "related" and they must "amount to or pose a threat of continued criminal activity."

Regarding RICO pattern, the complaint makes a compelling showing of the relatedness of the Verizon defendants' fraudulent acts. "Predicate acts are horizontally related when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Reich v. Lopez*, 858 F.3d at 61 (quoting *H.J.*, 492 U.S. at 240). VNE or VAW's generation of unauthorized accounts or charges and eventually the illegal debt, VAW/VSL/VCI/VBN's deployment of debt collection agencies, VAW's credit reporting, and the operation of deceit against state and local governments run by VCI, VAW, and VNE's regulator-relations unit were all horizontally related, built upon each other, and targeted the same victims.

The complaint makes a similarly compelling showing of the continuity of the defendants' criminal acts. "[C]ontinuity can be closed-ended or open-ended." *Reich*, 858 F.3d at 60. In this circuit, closed-ended continuity "generally requires that the crimes extend over at least two years." *Reich*, 858 F.3d at 60 (citing *Spool v. World Child*, 520 F.3d at 184 ("Although we have not viewed two years as a bright-line requirement, it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity[.]")) The complaint alleges that VAW's racketeering activities dated back to at least 2008 (SAC ¶44) and persisted since then; that VAW's racketeering activities started no later than 2015 (SAC ¶3) and has ensnared other Massachusetts customers since then (SAC ¶40); and that VCI/VBN/VSL's debt collection role

started no later than early 2016 (SAC ¶3) and continued in different states in 2020 (SAC ¶39).
And VCR's apparent job as the other Verizon defendants' troubleshooter and enforcer in the
most contentious debt collection cases is reason enough to believe that its role is also ongoing
and a continuing threat. In other words, the defendants' generation of false charges and debt,
attempts to collect on the illegal debt, and operation of deceit against government regulators and
investigators have existed for many years and also continued into 2020, so we have enough
reason to believe that the Verizon racket shows both as a "closed-ended" continuity and an
"open-ended" pattern by the definition of *H.J. Inc.* (see also *DeFalco*, 244 F.3d; *Cofacredit*, 187
F.3d; *GICC Capital Corp.*, 67 F.3d.)

 

    ix.     *Motion Mischaracterizes the Remaining MGL Ch.93 and 93A Claims and Court's*
           *Subject Matter Jurisdiction Thereof*

        Apart from the factual question of how VNE set up telecommunication service in
Plaintiff's name, the complaint alleges that VNE unfairly accrued balance on the phone service
without properly billing Plaintiff, which would have alerted him to the existence of the
residential account in 2015. When the balance went unpaid and the defendants turned the service
into a collection account that they then handed off to a collection agency, it was this collection
agency that notified Plaintiff in 2016 and advised him to get in touch with the defendants. In not
promptly billing Plaintiff, the defendants may have boosted its nominal revenue in 2015, but this
billing practice was unfair and violated the consumer protection clause in MGL Chap.93A.

        The complaint further alleges that when Plaintiff got in touch with VNE in 2016, VNE
falsely and deceptively misrepresented to Plaintiff that an investigation would be carried out into
the phone service and also that the collection account deriving from the phone service would be

closed. None of these steps happened. In making these false and deceptive representations to

Plaintiff, VNE may have temporarily placated an angry customer, but it again violated the

consumer protection clause in MGL Chap.93A.

      Both VNE's billing practice in 2015 and its lying act in 2016 is governed by Chap.93A,

and the complaint calls for a trial about "the legitimacy and legality of the original debt" by

standards established by the state's unfair commercial practice and consumer protection law.

      The defendants' motion, by contrast, presumes that Plaintiff's claims under MGL Ch.

93A, Section 2 are "premised upon violations of state law obligations imposed upon a furnisher's

duties otherwise governed by 15 U.S.C. §§ 1681s-2(a) or (b)" and asks to preempt these claims

by conflating them with his FCRA claims. But both the unfair billing practice on the telephone

account and the negligent misrepresentation about the collection account occurred before any

bad credit information was reported to the CRAs.

      Remarkably, the defendants tried this feeble attempt at conflating FCRA claims and state

consumer protection law claims before. In *Becker v. Verizon Pa., Inc.*, Case No. 3:16-cv-170

(W.D. Pa. Jun. 2, 2017), the defendant, apparently a Pennsylvania affiliate of the current

defendants, similarly wanted to subsume a plaintiff's state law claim under her FCRA claim,

prompting that court to rebuke the defendant that the consumer protection claim stemmed from

allegations that "relate to Verizon's debt-collection activities—and not to its conduct in

furnishing information to a CRA. Thus, this claim is not preempted by § 1681t(b)(1)(F)."

      In the instant case, the complaint alleges facts about VNE's unfair billing practice and

false statements made to a consumer that preceded the whole fiasco about the defendants'

subsequent transactions with debt collection firms and reports to the CRAs. The consumer

protection claims are therefore distinct from the FCRA and FDCPA claims and are not

preempted by the federal claims. The defendants' past experience in federal courts with this repeatedly tried and bankrupt tactic of conflation again suggests their intellectual dishonesty and bad faith in peddling this weakly argument in yet another courtroom.

Separately, we must note that the defendants' argument that the Court does not have subject matter jurisdiction over Massachusetts state law claims because Plaintiff suffered financial harm only when he bought his apartment in New York is both factually reductive and legally perverse. It is factually reductive because even before bad credit was reported, VNE already violated consumer protection law in MGL Chap.93A against deceptive and unfair business practice through its unfair billing practice on the putative VNE account in 2015 and later through its 2016 deceptive and negligent misrepresentations to Plaintiff about what it would do about the phone service account and the derivative collection account. Since Plaintiff did not discover that the collection account still existed and had been reported to the CRAs until he was shopping for a new home, it is also cynical and perverse for the defendants to insist that they escape legal consequences of their wrong-doing just because their deception did not allow Plaintiff to discover his injury until after Plaintiff moved to New York.

Both the letter of the statute and the case law in Massachusetts are abundantly clear that it is the defendant's obligation to prove that a matter does not touch on Massachusetts. The court in *Burnham v. Mark IV Homes, Inc.* 441 N.E.2d 1027 (Mass. 1982) quoted MGL Chap. 93A, § 3 (2) that "the burden of proving exemption from the provisions of this chapter shall be upon the person claiming the exemption" and held that "[i]n order to prove its entitlement to the exemption from liability contained in § 3 (1) ( b), a defendant in a c. 93A claim must prove…that the 'transactions and actions' complained of did not occur 'primarily and substantially within the commonwealth.'"

And as a general rule this is a fact intensive inquiry completely inappropriate for a motion to dismiss. The high court in Massachusetts rightly noted in *Kuwaiti Computer v. Digital Equip* 438 Mass. 459 (Mass. 2003) that "[a]ny determination [of "whether the 'actions and transactions occurred primarily and substantially within the commonwealth'] necessarily will be fact intensive and unique to each case." The court in *Smartling, Inc. v. Skawa Innovation Ltd.* 358 F. Supp. 3d 124 (D. Mass. 2019) also observed that "The Massachusetts Supreme Judicial Court has cautioned that evaluating whether the conduct at issue occurred primarily and substantially within the Commonwealth 'is not a determination that can be reduced to any precise formula,' and the court has explicitly 'declined to create a list of factors to be used in determining whether conduct alleged to be actionable under [Chapter 93A] occurred primarily and substantially within the Commonwealth.' *Kuwaiti Danish*, 781 N.E.2d at 798. Rather, '[s]ignificant factors that can be identified for one case may be nonexistent in another,' and the 'determination necessarily will be fact intensive and unique to each case.'"

In any event, the Verizon defendants' notion that the location of the injury (New York) exempts them from the state law of Massachusetts was explicitly rebutted in *Kuwaiti Computer*: "The Appeals Court, like the Federal courts, places little weight on the 'place of injury' factor, and rejects it as the determinative factor. See *Goldstein Oil Co. v. C.K. Smith Co.*, supra at 249 n. 7; *Clinton Hosp. Ass'n v. Corson Group, Inc.*, supra at 1266."

In the current case, all factors heavily incline towards Massachusetts. The billing fraud took place entirely within Massachusetts in the first place. The complaint alleges that VNE engaged in unfair billing practice in 2015 and negligently misrepresented to Plaintiff in 2016 about what would become of the phone service in question and the collection account that derived from it. These VNE actions took place wholly within the Commonwealth of

Massachusetts. Yet, even after promising Plaintiff otherwise, the defendants did not cancel the collection account. They also did not open an investigation or request further input from Plaintiff. Kept in the dark, Plaintiff came to rely on the defendants' negligent misrepresentation for a long time afterwards. This reliance caused Plaintiff to 1) miss earlier opportunity to rebuild creditworthiness, 2) not act more vigorously to look out for and prevent information about the disputed collection account from being provided to the CRAs and other third-parties, and 3) endure continuous and rude invasion of his privacy. The harm was already done by the end of 2016, albeit undiscovered, and New York is merely where Plaintiff realized his losses and discovered the defendants' past wrong-doing. In truth, it would be unreasonable to expect Plaintiff to discover the injury in face of both affirmative lying and passive silence from the defendants in 2016-2017. In breaking a law and covering up the act in one fell swoop, the defendants ought not to be able to perversely benefit from the argument that Plaintiff is not entitled to Massachusetts's statutory consumer protection simply because the defendants caused Plaintiff to become unaware of the defendants' wrongful actions and of the scope of the injury until after he moved to New York and started to shop for a new home.

*

For the foregoing reasons, Plaintiff respectfully asks that the Verizon defendants' motion to dismiss be denied.

Most respectfully,

HZ Wang